# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

CARTER PAGE,

                    Plaintiff,

  v.

DEMOCRATIC NATIONAL
COMMITTEE; PERKINS COIE LLP;
MARC ELIAS; AND MICHAEL
SUSSMANN,

                    Defendants.

Case No. CIV-18-1019-HE

**OPENING MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS COMPLAINT
<u>UNDER RULES 12(b)(1), 12(b)(2), AND 12(b)(6)</u>**

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ........................................................................... 1

RELEVANT FACTS........................................................................................ 4

    A.    The Parties ......................................................................................... 4

    B.    Alleged Defamatory Statements............................................................ 5

ARGUMENT.................................................................................................. 7

I.     LEGAL STANDARDS .......................................................................... 7

II.    THIS CASE MUST BE DISMISSED FOR LACK OF PERSONAL AND
      SUBJECT-MATTER JURISDICTION ..................................................... 8

    A.    This Court Lacks Personal Jurisdiction.......................................... 8

          1.    The Court Lacks General Jurisdiction Over Any Defendant............. 9

          2.    The Court Lacks Specific Jurisdiction Over Any Defendant .......... 11

    B.    This Court Lacks Subject Matter Jurisdiction............................ 14

          1.    The Court Lacks Federal Question Jurisdiction Over This
               Action Under 28 U.S.C. § 1331 ..................................................... 14

          2.    The Court Lacks Diversity Jurisdiction Over This Action
               Under 28 U.S.C. § 1332(a)(1) ....................................................... 15

III.   JURISDICTIONAL INFIRMITIES ASIDE, PAGE'S FEDERAL CLAIMS
      FAIL ON THE MERITS ...................................................................... 18

    A.    Page Fails to Allege Actionable Anti-Terrorism Act Claims ..................... 18

    B.    Page Fails to Allege Actionable Civil RICO Claims ................................. 20

IV.   THE COURT SHOULD DISMISS PAGE'S PENDENT STATE CLAIMS
      ON SUBSTANTIVE GROUNDS.......................................................... 23

    A.    Page's Defamation Claim Is Time-Barred ................................................ 24

    B.    Page Fails to Plausibly Allege Defamation ............................................... 26

C.     Page Fails to Allege an Actionable Tortious Interference Claim ............... 31

V.    THE COURT SHOULD DENY PAGE LEAVE TO AMEND ............................ 33

VI.   CONCLUSION ....................................................................................................... 34

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anzures v. Flagship Rest. Grp.*,
   819 F.3d 1277 (10th Cir. 2016) ................................................................ 12

*Arbaugh v. Y&H Corp.*,
   546 U.S. 500 (2006) ................................................................................. 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................. 8, 26

*Avington v. Bank of Am., N.A.*,
   No. 17-CV-21-JED-FHM, 2018 WL 4471774 (N.D. Okla. Sept. 18,
   2018) ....................................................................................................... 21

*Bache Halsey Stuart Shields, Inc. v. Tracy Collins Bank & Tr. Co.*,
   558 F. Supp. 1042 (D. Utah 1983) .......................................................... 21

*BancOklahoma Mortg. Corp. v. Capital Title Co.*,
   194 F.3d 1089 (10th Cir. 1999) .......................................................... 22, 23

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................... 8

*Billinger v. Weinhold*,
   531 F. App'x 928 (10th Cir. 2013) .......................................................... 24

*Biro v. Condé Nast*,
   807 F.3d 541 (2d Cir. 2015) .................................................................... 30

*Boettcher v. Conoco Phillips Co.*,
   No. CIV-16-1128-HE, 2017 WL 5244799 (W.D. Okla. Apr. 24, 2017) .... 24

*Boone v. Carlsbad Bancorporation, Inc.*,
   972 F.2d 1545 (10th Cir. 1992) .............................................................. 22

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*,
   757 F.3d 1125 (10th Cir. 2014) .............................................................. 26

*Calder v. Jones*,
   465 U.S. 783 (1984) ................................................................................. 13

*Calvert v. Swinford,*
  382 P.3d 1028 (Okla. 2016) .................................................................................. 25

*Cashland Inc. v. Cashland Inc.,*
  No. CIV-15-800-W, 2016 WL 6916776 (W.D. Okla. Jan. 14, 2016) ................. 10, 11

*Choctaw Town Square, LLC v. KOKH Licensee, LLC,*
  2015 WL 11661754 (W.D. Okla. June 18, 2015) ...................................................... 30

*Citizens Concerned for Separation of Church & State v. City & Cty. of
  Denver,*
  628 F.2d 1289 (10th Cir. 1980) ................................................................................... 7

*Condict v. Condict,*
  826 F.2d 923 (10th Cir. 1987) .............................................................................. 22, 23

*Daimler AG v. Bauman,*
  571 U.S. 117 (2014) ......................................................................................... 9, 10, 11

*Deck v. Engineered Laminates,*
  349 F.3d 1253 (10th Cir. 2003) ................................................................................. 20

*Deripaska v. Associated Press,*
  282 F. Supp. 3d 133 (D.D.C. 2017) ........................................................................... 30

*Doe v. Nat'l Med. Servs.,*
  974 F.2d 143 (10th Cir. 1992) ................................................................................... 11

*Drake v. City of Fort Collins,*
  927 F.2d 1156 (10th Cir. 1991) ................................................................................... 9

*Duran v. Carris,*
  238 F.3d 1268 (10th Cir. 2001) ................................................................................. 23

*FL Smidth A/S v. Jeffco. LLC,*
  CIV-08-0215-CVE, 2008 WL 4426992 (N.D. Okla. Sep. 25, 2008) ........................ 28

*Full Life Hospice, LLC v. Sebelius,*
  709 F.3d 1012 (10th Cir. 2013) ................................................................................. 14

*Garman v. Campbell Cty. Sch. Dist. No. 1,*
  630 F.3d 977 (10th Cir. 2010) ................................................................................... 14

*Gertz v. Robert Welch, Inc.,*
  418 U.S. 323 (1974) ................................................................................................... 29

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
　564 U.S. 915 (2011) ..................................................................................... 9, 10

*Grogan v. KOKH, LLC*,
　256 P.3d 1021 (Okla. Civ. App. 2011) ...................................................... 26

*Grupo Dataflux v. Atlas Glob. Grp., L.P.*,
　541 U.S. 567 (2004) ....................................................................................... 17

*Hart v. Blalock*,
　932 P.2d 1124 (Okla. 1997) ........................................................................ 26

*Herbert v. Okla. Christian Coal.*,
　992 P.2d 322 (Okla. 1999) ........................................................................... 27

*Hetronic Int'l Inc. v. Rempe*,
　99 F. Supp. 3d 1341 (W.D. Okla. 2015) ................................................... 27

*Hodgson v. Farmington City*,
　675 F. App'x 828 (10th Cir. 2017) .............................................................. 7

*Jankovic v. Int'l Crisis Grp.*,
　822 F.3d 576 (D.C. Cir. 2016), *cert. denied*, 137 S. Ct. 1434 (2017) ........................ 29

*Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Inv'r's Servs., Inc.*,
　175 F.3d 848 (10th Cir. 1999) ..................................................................... 33

*Jencks v. Cole*,
　No. CIV-15-0164-HE, 2015 WL 3460545 (W.D. Okla. May 27, 2015).................... 27

*Johnson v. National Carriers, Inc.*, No. CIV-06-802-F, 2006 WL 3300761,
　at *3 (W.D. Okla. Nov. 13, 2006) ............................................................... 24

*Joint Tech., Inc. v. Weaver*,
　No. CIV-11-846-M, 2011 U.S. Dist. LEXIS 149339 (W.D. Okla.
　Dec. 29, 2011) ................................................................................................. 32

*Joplin v. Sw. Bell Tel. Co.*,
　753 F.2d 808 (10th Cir. 1983) ..................................................................... 25

*Jurkowski v. Crawley*,
　637 P.2d 56 (Okla. 1981) .............................................................................. 30

*Koch v. City of Del City*,
　660 F.3d 1228 (10th Cir. 2011) ................................................................... 23

*Krimbill v. Talarico*,
    417 P.3d 1240 (Okla. Civ. App. 2017) ....................................................... 31

*Linde v. Arab Bank, PLC*,
    882 F.3d 314 (2d Cir. 2018)...................................................................... 19

*Mac Adjustment, Inc. v. Prop. Loss Research Bureau*,
    595 P.2d 427 (Okla. 1979)........................................................................ 32

*Marcus v. Kansas Dep't of Revenue*,
    170 F.3d 1305 (10th Cir. 1999) ............................................................... 14

*Martinez v. Martinez*,
    62 F. App'x 309 (10th Cir. 2003) ....................................................... 16, 17

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing*,
    674 F.3d 369 (4th Cir. 2012) ................................................................... 30

*McBride v. Doe*,
    71 F. App'x 788 (10th Cir. 2003) ........................................................... 16

*Middleton v. Stephenson*,
    749 F.3d 1197 (10th Cir. 2014) ............................................................... 16

*Morris v. Khadr*,
    415 F. Supp. 2d 1323 (D. Utah 2006)...................................................... 19

*Morrow Dev. Corp. v. Am. Bank & Tr. Co.*,
    875 P.2d 411 (Okla. 1994)........................................................................ 32

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964)................................................................................. 29

*Newman-Green, Inc. v. Alfonzo-Larrain*,
    490 U.S. 826 (1989)................................................................................. 16

*Old Republic Ins. Co. v. Cont'l Motors Inc.*,
    877 F.3d 895 (10th Cir. 2017) ................................................................. 11

*Page v. Oath*,
    No. 17 Civ. 6990 (LGS), 2018 WL 1406621 (S.D.N.Y. Mar. 20, 2018) ......... 3, 19 , 33

*Paradigm All., Inc. v. Celeritas Techs., LLC*,
    722 F. Supp. 2d 1250 (D. Kan. 2010)...................................................... 21

*PCH Radiology, PC v. Eagle Eye Radiology, Inc.*,
No. CIV-09-553-W, 2009 U.S. Dist. LEXIS 140339 (W.D. Okla.
Nov. 3, 2009) ............................................................................................... 32

*Peterson v. Grisham*,
594 F.3d 723 (10th Cir. 2010) ..................................................................... 8

*Pippen v. NBC Universal Media, LLC*,
734 F.3d 610 (7th Cir. 2013) ..................................................................... 30

*Resolution Tr. Corp. v. Grant*,
901 P.2d 807 (Okla. 1995) .......................................................................... 25

*Robbins v. Oklahoma*,
519 F.3d 1242 (10th Cir. 2008) ..................................................................... 8

*Ruhrgas AG v. Marathon Oil Co.*,
526 U.S. 574 (1999) ....................................................................................... 7

*Sac & Fox Nation of Okla. v. Cuomo*,
193 F.3d 1162 (10th Cir. 1999) ................................................................... 15

*Sadat v. Mertes*,
615 F.2d 1176 (7th Cir. 1980) ..................................................................... 16

*Safe Streets All. v. Hickenlooper*,
859 F.3d 865 (10th Cir. 2017) ..................................................................... 14

*Sahmaunt v. Horse*,
593 F. Supp. 162 (W.D. Okla. 1984) ........................................................... 15

*Satterfield v. Gov't Emps. Ins. Co.*,
287 F. Supp. 3d 1285 (W.D. Okla. 2018) .................................................... 12

*Schatz v. Republican State Leadership Comm.*,
669 F.3d 50 (1st Cir. 2012) ......................................................................... 30

*Sellers v. Okla. Publ'g Co.*,
687 P.2d 116 (Okla. 1984) ........................................................................... 28

*Sherrod v. Byrd*,
No. CIV-16-780-F, 2017 WL 4080478 (W.D. Okla. Aug. 9, 2017) ............ 9

*Shrader v. Biddinger*,
633 F.3d 1235 (10th Cir. 2011) ................................................................... 12

*Springer v. Richardson Law Firm*,
239 P.3d 473 (Okla. Civ. App. 2010) ........................................................ 27

*Stebbins v. Edwards*,
224 P. 714 (Okla. 1924) ............................................................................ 32

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ...................................................................................... 7

*Strong v. Oklahoma Publ'g Co.*,
899 P.2d 1185 (Okla. Civ. App. 1995) ..................................................... 29

*Tal v. Hogan*,
453 F.3d 1244 (10th Cir. 2006) .......................................................... 4, 20

*Tarver v. Ford Motor Co.*,
No. CIV-16-548-D, 2016 WL 7077045 (W.D. Okla. Dec. 5, 2016) ........... 9

*Torwest DBC, Inc. v. Dick*,
810 F.2d 925 (10th Cir. 1987) ................................................................. 22

*Trackwell v. United States*,
472 F.3d 1242 (10th Cir. 2007) ................................................................. 9

*Trant v. Oklahoma*,
874 F. Supp. 2d 1294 (W.D. Okla. 2012), *aff'd*, 754 F.3d 1158
(10th Cir. 2014) ........................................................................................ 15

*United States v. Botefuhr*,
309 F.3d 1263 (10th Cir. 2002) .......................................................... 9, 23

*Walden v. Fiore*,
571 U.S. 277 (2014) ............................................................................ 12, 13

*Warnick v. Cooley*,
895 F.3d 746 (10th Cir. 2018) ................................................................. 33

*Weston v. Weston*,
No. 08-CV-0365, 2008 WL 4058027 (N.D. Okla. Aug. 26, 2008) ........... 17

*Whitney v. New Mexico*,
113 F.3d 1170 (10th Cir. 1997) ................................................................. 9

*Wilspec Techs., Inc. v. Dunan Holding Grp. Co.*,
204 P.3d 69 (Okla. 2009) ......................................................................... 31

*Woods v. Prestwick House, Inc.*,
  247 P.3d 1183 (Okla. 2011) ................................................................ 25

## STATUTES

18 U.S.C.
  § 1031 ........................................................................................ 21
  § 1332(a)(1) ................................................................................ 16
  § 1503 .................................................................................. 20, 21
  § 1503(a) .................................................................................... 21
  § 1831 ........................................................................................ 20
  § 1832 .................................................................................. 20, 21
  § 1832(a) .................................................................................... 21
  § 1961(1)(B) .............................................................................. 20
  § 1962(c) .................................................................................... 23
  § 1962(d) .................................................................................... 23
  § 2331(1) .................................................................................... 18
  § 2331(1)(A) .............................................................................. 19
  § 2331(1)(C) ................................................................................ 2
  § 2332b ...................................................................................... 18
  § 2333 ........................................................................................ 18
  § 2333(a) .................................................................................... 18
  § 2339C ...................................................................................... 18

28 U.S.C.
  § 1331 .................................................................................. 14, 15
  § 1332 .................................................................................. 14, 16

Anti-Terrorism Act (ATA), 18 U.S.C. §§ 2331 *et seq.* ............................ *passim*

Economic Espionage Act of 1996 .............................................................. 21

OKLA. STAT. tit. 12, § 95(4) ...................................................................... 24

Racketeer Influenced and Corrupt Organizations Act of 1970 (RICO), 18
  U.S.C. §§ 1961 *et seq.* ...................................................................... *passim*

## RULES

Fed. R. Civ. P.
  12(b)(1) ................................................................................ 1, 15
  12(b)(2) ........................................................................................ 1
  12(b)(6) .......................................................................... 1, 15, 24
  12(h)(3) ...................................................................................... 14
  15(a)(2) ...................................................................................... 33

## CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. I ........................................................................................... 33

## OTHER AUTHORITIES

ABC News, "Former associate denies being Trump Russia middleman"
(Feb. 2, 2017) available at https://abcnews.go.com/US/video/associate-
denies-trump-russia-middle-man-45216480 ............................................................. 28

MSNBC, "Carter Page: 'I don't deny' meeting with Russian Ambassador"
(Mar. 2, 2017) available at https://www.msnbc.com/all-in/watch/carter-
page-i-don-t-deny-meeting-with-russian-ambassador-
889043011736?v=railb& ............................................................................................ 28

Defendants the Democratic National Committee (the "DNC"), Perkins Coie LLP ("Perkins Coie"), Marc Elias ("Mr. Elias"), and Michael Sussmann ("Mr. Sussmann") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff Carter Page's ("Plaintiff" or "Page") Complaint (the "Complaint" or "Compl.") in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(6).

## PRELIMINARY STATEMENT

This action arises from statements purportedly made to media and law enforcement regarding possible connections between Page—a public figure and policy advisor to then-candidate Donald Trump—and certain Russian nationals during the lead up to the 2016 presidential election. Specifically, Page complains that in the summer of 2016, Defendants allegedly told news publications and government officials that Page had attended two meetings with Russian officials and business executives during a 2016 visit to Moscow. Page claims those meetings never occurred, and that the subsequent news articles written on the subject—which Defendants are not alleged to have published—caused Page unwanted attention and the loss of unspecified business. Page therefore concludes that Defendants, in allegedly distributing information about Page's Russia connections, violated the federal Anti-Terrorism Act, 18 U.S.C. §§ 2331 *et seq.* (the "ATA"), and the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, and further defamed Page and tortiously interfered with his business.

Defendants deny the baseless allegations set forth in the Complaint. But Defendants need not address Page's bizarre and speculative narrative here because even if Page could

state a viable legal claim based on the vague facts alleged, this decidedly is not the appropriate forum in which to do so. *First*, Page has not alleged facts establishing that any of the Defendants has a substantial connection to Oklahoma or is alleged to have committed in Oklahoma the actions giving rise to Page's claims. Accordingly, personal jurisdiction does not exist in this case. Indeed, the only facts alleged in the Complaint having anything to do with Oklahoma relate to *Page's* purported connections to the state—as the owner of a business located here. The Supreme Court has roundly rejected the propriety of personal jurisdiction based on a plaintiff's tangential forum relationship alone. *Second*, and in any event, this Court lacks subject matter jurisdiction, as Page fails both to state a colorable claim under federal law and to establish complete diversity among the parties. With respect to the latter, in fact, Page disclaims any state citizenship at all, and fails to allege the domicile of any Defendant. Lacking jurisdiction over the parties and Page's claims, this action can—and should—be dismissed.

Even if the Court were to reach the merits of Page's Complaint, the facts alleged here—which must be taken as true—are inadequate to support a viable cause of action. With respect to Page's ATA claims (Counts II and Count III), the Complaint does not allege a single action occurring "primarily outside the territorial jurisdiction of the United States" or which "transcend[ed] national boundaries"—the threshold requirement under the federal statute. 18 U.S.C. § 2331(1)(C). On the contrary, Page expressly alleges that Defendants' disputed statements "occurred primarily *within the territorial jurisdiction of the United States*." Compl. ¶ 70 (emphasis added). Tellingly, a New York federal court earlier this year dismissed nearly identical claims brought by Page based on the same facts

2

and circumstances.  *See Page v. Oath*, No. 17 Civ. 6990 (LGS), 2018 WL 1406621 (S.D.N.Y. Mar. 20, 2018).  The same result is warranted here.

Page's civil RICO claims (Counts V and VI) fare no better.  The Complaint fails to allege a single "predicate" criminal violation by any Defendant—let alone a "pattern" of coordinated criminal activity sufficient to support a RICO claim.  Instead, even viewing his allegations in the most favorable light, Page merely recites the barebones elements of a civil RICO claim without alleging facts to support those elements.

With respect to his defamation claim (Count I), Page is filing this action well over a year after the purported "statements" he challenges occurred, and Oklahoma's one-year statute of limitations therefore bars his claim.  Indeed, Page filed this lawsuit only after a New York court dismissed with prejudice his claims against the publisher of the news article cited in the instant Complaint.  But Page's claim fails on the merits in any event. The purported defamatory statements regarding Page's Russia contacts are substantially true, and thus cannot be defamatory.  And even if the statements were false, Page, as a public figure, is required to plausibly plead Defendants made their defamatory remarks *with malice*.  Conclusory statements aside, Page has not done so—nor can he.

Finally, as to Count IV (Tortious Interference), Page makes no attempt to allege— even in conclusory fashion—that Defendants' conduct was undertaken with the purpose of destroying Page's business.  Nor, apart from broad-brushed assertions of harm, has Page alleged that Defendants' purported conduct was a proximate cause of any lost business.

## RELEVANT FACTS[1]

### A.    The Parties

Page is a "scholar in foreign policy" and businessman who, in 2016, served as one of five members of then-candidate Donald J. Trump's foreign policy advisory committee. Compl. ¶¶ 7, 26. Page is also a Managing Partner of Global Energy Capital, LLC ("GEC"), a New York Corporation with principal offices in New York City, and Global Natural Gas Ventures LLC ("GNGV"), which both specialize in investment and advising in the energy sector in emerging markets, including Russia. *Id.* ¶ 7. GNGV is an Oklahoma Corporation and Page's only purported connection to Oklahoma. Through GEC and GNGV, Page has "maintained relationships" and works "as a trusted advisor and partner" with Russian energy companies Gazprom and Tatneft and state-owned Kazakhstan energy companies Samruk Kazyna and KazMunayGas. *Id.* ¶¶ 46, 78, 80. Page claims that he "maintains no permanent residence or domicile anywhere." *Id.* ¶ 7.[2]

Defendant DNC is a national committee dedicated to electing local, state, and national candidates of the Democratic Party to public office. *Id.* ¶ 8. According to the Complaint, the DNC "works closely with Democratic public officials and assists state parties and candidates by contributing money, making expenditures on their behalves, and

---

[1] For the purpose of this motion, the facts pleaded in Plaintiff's Complaint are assumed to be true.

[2] Notably, however, Page has made sworn statements as late as September 2017 in other judicial proceedings where he claims to be a resident of New York. *See* Complaint ¶ 8, *Page v. Oath Inc.*, No. 17 Civ. 6990 (LGS) (S.D.N.Y. Sept. 14, 2018), Dkt. No. 1 ("Oath Complaint"). "Facts subject to judicial notice may be considered . . . includ[ing] another court's publicly filed records. . . ." *Hodgson v. Farmington City*, 675 F. App'x 828, 840-41 (10th Cir. 2017) (quoting *Tal v. Hogan*, 453 F.3d 1244, 1264-65 n.24 (10th Cir. 2006)).

providing active support through the development of programs benefiting Democratic candidates." *Id*.

Defendant Perkins Coie is a law firm organized as a Limited Liability Partnership with its principal place of business in Seattle, Washington. *See id.* ¶ 9.   Defendants Mr. Elias and Mr. Sussmann are partners at Perkins Coie, who "conduct . . . business for Perkins Coie from an office in Washington, D.C." *Id.* ¶ 12.   Neither Mr. Elias nor Mr. Sussmann is alleged to have traveled to or conducted business in Oklahoma.

## B.     Alleged Defamatory Statements

Page appears to allege that Defendants, working with "consultants" to conduct opposition research, provided untrue information to news outlets and government officials that led to publication of certain news articles identified in Page's Complaint.   Page specifically references two articles: a September 23, 2016 Yahoo News article (the "Yahoo Article"), and a January 11, 2017 BuzzFeed, Inc. article (the "BuzzFeed Article").   *Id*. ¶¶ 12, 18, 31.

As it relates to the Yahoo Article, on September 23, 2016, Yahoo News published an article titled "U.S. intel officials probe ties between Trump adviser and Kremlin." *Id.* ¶¶ 3, 18.   Page alleges that the article contained two false statements that "originated from the Defendants and their consultants." *Id.* ¶ 20.   *First*, the Yahoo Article stated that Page "met with Igor Sechin, a longtime Putin associate and former Russian deputy prime minister" and that, during the meeting, "Sechin raised the issue of the lifting of [U.S.] sanctions" imposed on him. *Id*.   Mr. Sechin is currently the Executive Chairman of Rosneft. *Id.*   *Second*, the Yahoo Article stated that "U.S. intelligence agencies have also

5

received reports that Page met with another top Putin aide while in Moscow – Igor Diveykin," and that Diveykin was "believed . . . to have responsibility for intelligence collected by Russian agencies about the U.S. election." *Id.* ¶ 21.  Mr. Diveykin is a senior official in President Putin's administration.  *Id.*  The Yahoo Article attributed this information to a "well-placed Western intelligence source," whom Page alleges to be Christopher Steele—not any of the Defendants.  *Id.* ¶¶ 17, 27, 29.  Nevertheless, Page alleges the information reported in the Yahoo Article somehow "originated with the Defendants." *Id.* ¶ 22.

As it relates to the BuzzFeed Article, according to Page, on January 10, 2017, BuzzFeed, Inc. published an article titled, "These Reports Allege Trump Has Deep Ties To Russia," which included an intelligence dossier (the so-called "Steele Dossier") discussing certain national security matters surrounding President Trump and his political ties to Russia.  *Id.* ¶ 31.  Page alleges the Steele Dossier, in turn, contained "many of the primary false allegations from the Yahoo Report." *Id.*  Page does not identify the "false allegations," but presumably they regard two meetings Page was said to have attended while in Moscow.  *Id.*  Again, Page attributes these statements generally to "Defendants, their political associates and their consultants," making no attempt to identify or differentiate the source of the statements within the Steele Dossier. *Id.* ¶ 32.  The next day, on January 11, 2017, the Wall Street Journal revealed that Christopher Steele—not any of the Defendants—was the author of the dossier.

6

Page further alleges that Perkins Coie "provided additional false information to the FBI." *Id*. ¶ 29.  The Complaint does not allege what false information was provided to the FBI.

On October 15, 2018, over two years after Page first became aware of the purportedly defamatory statements made about his meetings with Russian nationals, and over eighteen months after Page became aware that Christopher Steele had compiled the information comprising the Steele Dossier, Page filed the present lawsuit.

For the reasons set out below, Page's Complaint should be dismissed.

## ARGUMENT

## I.   LEGAL STANDARDS

At the outset, this Court lacks jurisdiction over the Defendants as well as the subject matter of this action, and the Court need not—and should not—reach the merits of Page's claims.  As the Supreme Court has explained, "[t]he requirement that jurisdiction be established as a threshold matter . . . is 'inflexible and without exception.'"  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (citation omitted); *see also Citizens Concerned for Separation of Church & State v. City & Cty. of Denver*, 628 F.2d 1289, 1301 (10th Cir. 1980) ("A federal court must in every case, and at every stage of the proceeding, satisfy itself as to its own jurisdiction.").  "Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them."  *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999).  Here, Page fails to allege a factual basis upon which this Court could find the exercise of

either personal or subject matter jurisdiction proper—and indeed no such basis exists. Either jurisdictional defect independently mandates dismissal.

Should this court nonetheless consider the substance of Page's Complaint, on a motion to dismiss, a district court accepts all well-pled factual allegations in the complaint and draws all reasonable inferences in the non-moving party's favor. *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010). While the court asks whether the complaint contains "enough facts to state a claim to relief that is plausible on its face," it is well-settled that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 697 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, a plaintiff must "frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alterations and quotation marks omitted). Such conclusory allegations "disentitle[] them to the presumption of truth." *Iqbal*, 556 U.S. at 681.

## II.   THIS CASE MUST BE DISMISSED FOR LACK OF PERSONAL AND SUBJECT-MATTER JURISDICTION

### A.   This Court Lacks Personal Jurisdiction

This action must be dismissed in its entirety for want of personal jurisdiction. As the party asserting claims, Page "bears the burden to establish personal jurisdiction over

each defendant named in the action." *Tarver v. Ford Motor Co.*, No. CIV-16-548-D, 2016 WL 7077045, at *1 (W.D. Okla. Dec. 5, 2016).[3]  And while "[t]his burden is light in the preliminary stages of litigation," Page must still "present competent proof in the form of affidavits and other written materials that, if true, would establish a prima facie showing that jurisdiction is proper." *Id.*  Page has not even attempted to meet—and cannot meet— his burden here.

1.   The Court Lacks General Jurisdiction Over Any Defendant

Personal jurisdiction can take one of two forms—each dependent on the defendant's degree of contact with the forum state.  *United States v. Botefuhr*, 309 F.3d 1263, 1271-72 (10th Cir. 2002).  General—or "all-purpose"—jurisdiction exists only where a defendant's "affiliations with the [forum] are so constant and pervasive 'as to render [it] essentially at home in the forum State.'"  *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  "In contrast . . . specific jurisdiction is confined to the adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'"  *Goodyear*, 564 U.S. at 919 (citation omitted).  "[O]nly a limited set of affiliations with a forum will render a

---

[3] Although courts generally review *pro se* "pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys," *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007), even a deferential pleading standard would not save Page's deficient Complaint here, as the Court may neither "supply additional factual allegations to round out a [*pro se*] plaintiff's complaint," *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997), nor "construct arguments or theories for the plaintiff in the absence of any discussion of those issues," *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).  In other words, Page's "pro se status does not entitle him to application of different rules."  *Sherrod v. Byrd*, No. CIV-16-780-F, 2017 WL 4080478, at *1 (W.D. Okla. Aug. 9, 2017) (quotation marks omitted)

defendant amenable to" the court's general or "all-purpose jurisdiction." *Daimler*, 571 U.S. at 137. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home"—that is, the corporation's principal place of business or state of incorporation. *Goodyear*, 564 U.S. at 924. Indeed, it is "an exceptional case" where a defendant's contacts with a forum other than its paradigmatic "home" are "so substantial and of such a nature as to render [the defendant] at home in that State." *Daimler*, 571 U.S. at 139 n.19.

This is not one of those exceptional cases. Page has not alleged any facts that would establish that Mr. Elias or Mr. Sussmann is domiciled in Oklahoma, nor that either the DNC or Perkins is incorporated or maintains its headquarters or principal place of business in Oklahoma. *Id.* at 139 (finding no general jurisdiction where "neither" defendant was "incorporated in [the forum state], nor does either entity have its principal place of business there"). In short, far from alleging "exceptional" facts establishing that Defendants' "affiliations with the State are so 'continuous and systematic' as to render [them] essentially at home in'" Oklahoma, *id.*, Page fails to put forth *any* facts connecting *any* Defendant to the State.

At most, Page makes passing reference to the DNC's status as a "national committee." Compl. ¶ 8. But the mere fact that the DNC operates nationally and therefore may, from time to time, conduct some activities in Oklahoma, plainly does not make the DNC "at home" in the State. "A corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler*, 571 U.S. at 139 n.20; *see also Cashland Inc. v.*

*Cashland Inc.*, No. CIV-15-800-W, 2016 WL 6916776, at *9-10 (W.D. Okla. Jan. 14, 2016) (finding that even defendant's "brick-and-mortar presence" and "operation of fourteen stores" in Oklahoma did not sufficiently "approximate physical presence" to support jurisdiction).  Rather, the "general jurisdiction [inquiry] . . . calls for an appraisal of [an entity's] activities in their entirety, nationwide and worldwide." *Id.* at *10 (internal citation omitted).  Applying that standard here, there can be no real dispute that any connection the DNC—or, for that matter, any other Defendant—may have with Oklahoma is not sufficient to "approximate physical presence" in the State.  *Cashland*, 2016 WL 6916776, at *10.  Whatever "quantum of local activity" each Defendant maintains in Oklahoma (none of which is alleged by Page), *Daimler*, 571 U.S. at 139 n.20, it is plainly not so "strong" that this Court "may assert jurisdiction over [Defendants] on *any* matter, whether or not it arises out of the defendant's contacts with the state." *Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 146 (10th Cir. 1992).

### 2. The Court Lacks Specific Jurisdiction Over Any Defendant

Page similarly fails to establish specific jurisdiction with respect to any Defendant.  "Specific jurisdiction may be asserted" only if two elements are met—that is, if (1) "the defendant has 'purposefully directed' its activities toward the forum state," and (2) "the lawsuit is based upon injuries which 'arise out of' or 'relate to' the defendant's contacts with the state." *Nat'l Med. Servs.*, 974 F.2d at 146 (citations omitted).  In other words, specific jurisdiction exists only where "the cause of action relates to the [defendant's] contacts with the forum [S]tate." *Old Republic Ins. Co. v. Cont'l Motors Inc.*, 877 F.3d 895, 904 (10th Cir. 2017).

Here, none of the facts alleged—let alone the facts giving rise to Page's claims—pertains to activities that Defendants purportedly performed in Oklahoma.  *Satterfield v. Gov't Emps. Ins. Co.*, 287 F. Supp. 3d 1285, 1292-93 (W.D. Okla. 2018).  Even taking his Complaint at face value, Page does not allege Defendants commissioned the purported "opposition research" within or from Oklahoma; Page does not allege that Defendants or anyone else conducted said research in Oklahoma; and Page does not allege that Defendants or anyone else published their supposed findings in Oklahoma.[4]  Nor does Page allege that any of Defendants' purported sources lived in Oklahoma, or that any investigative interviews took place in the State.  There are simply no facts, alleged or otherwise, that link this action to this forum.  *See Anzures v. Flagship Rest. Grp.*, 819 F.3d 1277, 1280 (10th Cir. 2016) (confirming that specific jurisdiction lies only "when there is 'an intentional action . . . expressly aimed at the forum state . . . with [the] knowledge that the brunt of the injury would be felt in the forum state"); *Walden v. Fiore*, 571 U.S. 277,

---

[4] Notably, Page does not allege that Defendants published the opposition research on any platform—national or otherwise.  Rather, Page claims that Defendants furnished third parties like BuzzFeed and Yahoo with information that those third parties then published online.  Even if the conduct of such independent actors could be imputed to Defendants for jurisdictional purposes (and it cannot), online publication of allegedly defamatory articles is not a sufficient basis to confer specific personal jurisdiction in this forum.  "[P]osting allegedly defamatory . . . information on an internet site does not, without more, subject the poster to personal jurisdiction wherever the posting could be read (and the subject of the posting may reside) . . . [I]n considering what 'more' could create personal jurisdiction for such activities, courts look to indications that a defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state."  *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011).  Nothing in the record so indicates as it relates to BuzzFeed or Yahoo—much less any of the Defendants.

288 (2014) (affirming dismissal on jurisdictional grounds where "no part of [the defendant's] course of conduct occurred in" the forum state).

On the contrary, the sole allegations in the Complaint bearing *any* relation to Oklahoma concern *Page's* minimal ties to the state. *See* Compl. ¶ 7 ("Dr. Page is the Managing Partner of Global Natural Gas Ventures LLC ('GNVG'), an Oklahoma Corporation with principal offices in Oklahoma City."). But as the Supreme Court has made clear, the "mere injury to a forum resident is not a sufficient connection . . . . Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290.[5] Accordingly, the mere fact that *Page* may have a weak connection to Oklahoma does not—and cannot—confer jurisdiction as to *Defendants*.

Because Page has not alleged facts supporting—and cannot establish—general or specific personal jurisdiction over any of the Defendants, dismissal is required.

---

[5] In defamation and libel cases, the plaintiff's connection to the forum is relevant only to the extent it demonstrates that the defendant targeted the forum in its efforts to defame the plaintiff, which is not alleged here. *See Calder v. Jones*, 465 U.S. 783, 789-90 (1984) (finding foreign defendants subject to specific jurisdiction in California where "their intentional and allegedly tortious, actions were *expressly aimed at California*)") (emphasis added). In *Calder*, the defendants authored an allegedly libelous story about the *in-forum* activities of a *forum* resident, using *in-forum* sources. *Id.* at 788-89. The court found jurisdiction proper in that instance because the defendants' tortious conduct was "calculated to cause injury . . . in [the forum]." *Id.* at 791. Here, by contrast, nothing in the record demonstrates that Defendants were aware of Page's tenuous connection to Oklahoma, and unlike in *Calder*, there are no facts alleged to suggest that Oklahoma was the "focal point" of either the story or of the harm Page purportedly suffered. *Id.* at 789.

**B.     This Court Lacks Subject Matter Jurisdiction**

Even if the Court's exercise of personal jurisdiction over the parties were proper

(and it is not), dismissal would be required for the independent reason that Page has not

alleged facts establishing this Court's subject-matter jurisdiction.   "The 'burden of

establishing' a federal court's subject matter jurisdiction 'rests upon the party asserting

jurisdiction.'"   *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017)

(citation omitted).   And "[t]he Federal Rules of Civil Procedure instruct that '[w]henever

it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the

subject matter, the court shall dismiss the action.'"   *Marcus v. Kansas Dep't of Revenue*,

170 F.3d 1305, 1309 (10th Cir. 1999) (quoting Fed. R. Civ. P. 12(h)(3)); *Full Life Hospice,*

*LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013) ("A court lacking jurisdiction cannot

render judgment but must dismiss the cause at any stage of the proceedings in which it

becomes apparent that jurisdiction is lacking.").

Here, Page baldly asserts that the Court has both federal question and diversity

jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332, respectively.   Compl. ¶¶

13-14.   But he is wrong on both counts.   Because Page fails to allege *facts* substantiating

subject matter jurisdiction under either theory, this case must be dismissed.

1.     The Court Lacks Federal Question Jurisdiction Over This Action
       Under 28 U.S.C. § 1331

Page's invocation of federal question jurisdiction requires him to plead a *plausible*

federal claim supported by sufficient allegations of *fact*.   *See Garman v. Campbell Cty.*

*Sch. Dist. No. 1*, 630 F.3d 977, 981 n.3 (10th Cir. 2010) ("'A plaintiff properly invokes

14

§ 1331 jurisdiction when she pleads a *colorable* claim arising under the Constitution or laws of the United States.'") (emphasis added) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006)); *see also Sac & Fox Nation of Okla. v. Cuomo*, 193 F.3d 1162, 1165 (10th Cir. 1999) ("A plaintiff creates federal-question jurisdiction by means of a '*well pleaded* complaint establishing either that federal law creates the cause of action or that the plaintiff's right to relief … depends on resolution of a substantial question of federal law.'") (emphasis added) (citation omitted).  Page purports to invoke two federal statutes—the ATA and RICO.  As demonstrated below, however, *see infra* Section III, Page fails to allege sufficient facts to state a plausible claim under either federal statute, and thus has not established federal question jurisdiction in this case.  *Sahmaunt v. Horse*, 593 F. Supp. 162, 164 (W.D. Okla. 1984) ("If the Plaintiff cannot state such a claim, the Court will lack jurisdiction."); *see generally Trant v. Oklahoma*, 874 F. Supp. 2d 1294, 1300 n.3 (W.D. Okla. 2012) ("[B]ecause Defendants' argument regarding subject-matter jurisdiction is based on the face of the Amended Complaint, the standard for dismissal under 12(b)(1) is the same as a motion under 12(b)(6)."), *aff'd*, 754 F.3d 1158 (10th Cir. 2014).

    2.    <u>The Court Lacks Diversity Jurisdiction Over This Action Under 28 U.S.C. § 1332(a)(1)</u>

Page separately purports to invoke diversity jurisdiction under 28 U.S.C. §1332(a)(1) on the grounds that "the matter in controversy . . . is between citizens of different states and exceeds $75,000 in damages."  Compl. ¶ 13; *see* 28 U.S.C. § 1332.  "Because federal courts are courts of limited jurisdiction, there is a presumption against its existence, and the party invoking federal jurisdiction bears the burden of proof when

diversity is alleged." *Martinez v. Martinez*, 62 F. App'x 309, 313 (10th Cir. 2003). "To determine whether a party has adequately presented facts sufficient to establish federal diversity jurisdiction, appellate courts must look to the face of the complaint, ignoring mere conclusory allegations of jurisdiction." *Id.* Page has not met his burden here.

"To invoke the power of the court pursuant to § 1332, allegations of diversity must be pleaded affirmatively." *Id*. Yet here, Page fails to allege the citizenship of any party. For his own part, in fact, Page expressly disclaims *any* state citizenship at all—alleging that, since 2016, he has "changed his location frequently as a protective defense," and "currently maintains no permanent residence or domicile anywhere." Compl. ¶¶ 7, 15. Taking Page's allegations as true, "settled precedent establishes that a citizen of the United States who is not also a citizen of one of the United States may not maintain suit under [28 U.S.C. § 1332(a)(1)]." *Sadat v. Mertes*, 615 F.2d 1176, 1180 (7th Cir. 1980); *see also Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828-29 (1989) (finding that defendant, "although a United States citizen, ha[d] no domicile in any State" and was "therefore 'stateless,'" which "destroyed complete diversity").[6]   Accordingly, Page's assertion of non-citizenship defeats his ability to rely upon diversity jurisdiction. *See McBride v. Doe*, 71 F. App'x 788, 790 (10th Cir. 2003) (acknowledging the court's "duty

---

[6] Based on his allegations in his previously dismissed lawsuit, it appears Page is most likely a citizen of New York—in which case diversity of citizenship would not exist here in any event. In *Page v. Oath, Inc.*, for example, Page alleged that he "maintained the State of New York as his principal mailing address since his birth." Oath Complaint ¶ 15. *See generally Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014) ("The party invoking diversity jurisdiction might satisfy this burden by leaning on a rebuttable presumption that its domicile, once established, remains the same."). Multiple Perkins partners share the domicile of New York with Page, which destroys diversity jurisdiction.

to construe the allegations of pro se litigants liberally," but affirming dismissal where pro se plaintiff failed to allege sufficient "information from which it can be determined whether diversity exists").

In any event, Page also fails to establish the citizenship of any *other* party.   He alleges the locations of Messrs. Elias and Sussmann's offices, *see* Compl. ¶ 12, but makes no effort to identify their states of domicile.   *See Martinez*, 62 F. App'x at 313.   Similarly, Page broadly describes the DNC as a "national committee . . . dedicated to electing local, state, and national candidates . . . to public office."   Compl. ¶ 8.   But he does not identify the DNC's state of incorporation or principal place of business.   Nor does he make any effort to address the citizenships of the partners comprising Perkins—alleging only that Perkins "is a Washington Limited Liability Partnership with offices worldwide."   *Id.* ¶ 9. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 569 (2004) ("The dismissal was based upon the accepted rule that, as a partnership, Atlas is a citizen of each state or foreign country of which any of its partners is a citizen.").   Because "[t]he complaint does not identify the citizenship of the parties[,] . . . the Court has no basis to exercise diversity jurisdiction over this case."   *Weston v. Weston*, No. 08-CV-0365, 2008 WL 4058027, at *3 (N.D. Okla. Aug. 26, 2008).

17

## III.   JURISDICTIONAL INFIRMITIES ASIDE, PAGE'S FEDERAL CLAIMS FAIL ON THE MERITS

### A.   Page Fails to Allege Actionable Anti-Terrorism Act Claims

Page fails to plead a colorable claim under the ATA.[7]  Section 2333 of the statute creates a narrow civil right of action for "[a]ny national of the United States injured in his or her person, property, or business by reason of an act of international terrorism." 18 U.S.C. § 2333(a).  Under the ATA, "international terrorism" is defined as activities that:

> (A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State;
>
> (B) appear to be intended –
>
>> (i) to intimidate or coerce a civilian population;
>>
>> (ii) to influence the policy of a government by intimidation or coercion; or
>>
>> (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and
>
> (C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum.

18 U.S.C. § 2331(1).

The ATA thus has four "separate requirements" for an act to constitute international terrorism—"that [the] act at issue (1) involve violence or endanger human life; (2) violate federal or state criminal law if committed in the United States; (3) appear intended to

---

[7] Page alleges that his ATA claims arise under 18 U.S.C. § 2332b and § 2339C, Compl. ¶¶ 64-76, which address the crimes of attempt or conspiracy to commit homicide and the willful financing of terrorism, respectively.  But 18 U.S.C. § 2333 is the sole provision that provides a limited civil cause of action for individuals allegedly harmed by acts that violate the ATA's criminal provisions.

intimidate or coerce civilian population, influence government policy, or affect government conduct by specified means; and (4) occur primarily outside the United States or transcend national boundaries." *Linde v. Arab Bank, PLC*, 882 F.3d 314, 326 (2d Cir. 2018) (citation omitted); *see also Morris v. Khadr*, 415 F. Supp. 2d 1323, 1328 (D. Utah 2006) (recognizing the same elements).

Page's claims fail on multiple grounds. At base, his Complaint alleges "defamatory statements by the DNC and Perkins Coie's consultants" to media outlets and federal authorities. Compl. ¶ 65. But, apart from a conclusory assertion that those alleged "statements involve[d] acts dangerous to human life that are a violation of the laws of the United States and Oklahoma," *id.* ¶ 67, the Complaint fails to allege any *facts* "involv[ing] violent acts or acts dangerous to human life," 18 U.S.C. § 2331(1)(A)—let alone cite any U.S. or state criminal law that Defendants plausibly violated by their conduct. Moreover, and in any event, Page himself concedes that Defendants' alleged "defamatory statements occurred primarily *within the territorial jurisdiction of the United States*," and suggests merely that the statements were in turn "further distributed *by the media* across Europe and worldwide." Compl. ¶ 70 (emphasis added). Thus, the alleged "acts" Page attributes to Defendants occurred within the United States, and any purported international impact of those acts was caused solely by independent actors.

Tellingly, a New York federal court recently dismissed nearly identical ATA claims by Page against the entities responsible for publishing the 2016 Yahoo Report at issue here—Oath Inc. and the Broadcasting Board of Governors. *Page v. Oath Inc.*, No. 17 Civ. 6990 (LGS), 2018 WL 1406621, at *3-4 (S.D.N.Y. Mar. 20, 2018) (finding, *inter alia*, that

publication of the Yahoo Report was neither a violation of any criminal law nor intended to intimidate or coerce a domestic or civilian population or influence government policy, and dismissing ATA claims).  Here, Page attempts to re-package the same deficient claims and assert them against different parties.  But his allegations fare no better, and the same outcome—dismissal with prejudice—is appropriate in this case.

### B.    Page Fails to Allege Actionable Civil RICO Claims

Page similarly fails to allege viable federal RICO claims.  To state a civil RICO claim, "a plaintiff must allege that the defendant violated the substantive RICO statute . . . by setting forth 'four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  *Deck v. Engineered Laminates*, 349 F.3d 1253, 1256-57 (10th Cir. 2003).  Racketeering activity is defined as "any act which is indictable" under any number of the enumerated federal laws. 18 U.S.C. § 1961(1)(B).  And a "pattern" of racketeering activity must include at least two predicate acts.  *Tal v. Hogan*, 453 F.3d 1244, 1267 (10th Cir. 2006).

Here, Page alleges that "[t]he DNC was a Racketeering Enterprise . . . formed in approximately April 2016 with the hiring of its opposition research team" or, alternatively, "was part of an Association-in-Fact Enterprise comprising element [sic] of the U.S. Intelligence Community including the FBI." Compl. ¶¶ 86, 90.  He further alleges that "[e]ach Defendant conducted and/or participated in the affairs of the DNC, its associated campaigns and the Association-In-Fact Enterprise through a pattern of racketeering activity, including acts indictable under 18 U.S. Code § 1831 (economic espionage), 18 U.S. Code § 1832 (theft of trade secrets), and 18 U.S. Code § 1503 (relating to obstruction

of justice [involving the U.S. Foreign Intelligence Surveillance Court])." *Id.* ¶¶ 89, 94 (alterations in original).

Page's claims fail for several independent reasons.  First, his Complaint purports—at most—to recite the barebones elements of the "predicate acts" Defendants allegedly engaged in, but it fails to plead *facts* substantiating those offenses.  *See Bache Halsey Stuart Shields, Inc. v. Tracy Collins Bank & Tr. Co.*, 558 F. Supp. 1042, 1045 (D. Utah 1983) ("[A] party must allege two acts of 'racketeering' with enough specificity to show there is probable cause the crimes were committed."); *see also, e.g.*, *Avington v. Bank of Am., N.A.*, No. 17-CV-21-JED-FHM, 2018 WL 4471774, at *3 (N.D. Okla. Sept. 18, 2018) (dismissing civil RICO claim where plaintiffs "complain[ed] that the defendants ha[d] committed major fraud against the United States under 18 U.S.C. § 1031, [but] provided no facts to support such a claim").  Nowhere, for example, does (or could) Page allege that Defendants engaged in any conduct intended to "benefit" a foreign entity—a necessary element of any Economic Espionage Act violation.  *Paradigm All., Inc. v. Celeritas Techs., LLC*, 722 F. Supp. 2d 1250, 1277 (D. Kan. 2010).

Similarly, Page accuses Defendants of stealing "trade secrets" under 18 U.S.C. § 1832, but fails to specify any particular trade secrets that any Defendant purportedly stole or misappropriated "related to a product or service."  18 U.S.C. § 1832(a).[8]  And Page cites the criminal statute prohibiting obstruction of justice, 18 U.S.C. § 1503, but makes no

---

[8] Construing his allegations liberally, Page alleges—at most—that the federal government (not Defendants) misappropriated unidentified trade secrets.  *See* Compl. ¶¶ 95-96 (alleging, in broad-brushed terms, that "*the United States* took" unspecified "trade secrets from [him] at the request of the Defendants, their political associates and consultants").

attempt to allege facts having anything to do with any effort on Defendants' part to "influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States." 18 U.S.C. § 1503(a). Because Page comes nowhere close to plausibly establishing that Defendants committed any of the criminal acts alleged, his claims of "racketeering activity" necessarily fail. *BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999) ("It follows that because the [Defendants] committed no predicate acts, they cannot be found to have engaged in 'racketeering activity.'").

Page's RICO claims also fail because the Complaint fails to establish a "pattern" of racketeering activity, as required under the statute. "[T]o establish a RICO pattern, a plaintiff must . . . demonstrate continuity, that is, 'the threat of continuing activity.' This element is derived from RICO's legislative history, which indicates that RICO does not apply to 'sporadic activity' or to the 'isolated offender.'" *Condict v. Condict*, 826 F.2d 923, 928 (10th Cir. 1987). Thus, an alleged "scheme to achieve a single discrete objective does not in and of itself create a threat of ongoing activity, even when that goal is pursued by multiple illegal acts, because the scheme ends when the purpose is accomplished." *Id*. Here, even viewed in the most favorable light, Page's Complaint alleges a singular series of acts concerning "defamatory statements [Defendants] distributed about" a single individual—"Dr. Page." Compl. ¶ 49. Page does not allege that Defendants' supposedly nefarious scheme extended beyond the one-time publication of purported opposition research. Nor does Page identify another alleged victim caught in Defendants' crosshairs. Such "a closed-ended series" of alleged actions intended "to accomplish a discrete goal" plainly cannot establish a "pattern" of RICO activity. *Duran v. Carris*, 238 F.3d 1268,

1271 (10th Cir. 2001) (quoting *Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1556 (10th Cir. 1992)); *see also Torwest DBC, Inc. v. Dick*, 810 F.2d 925, 929 (10th Cir. 1987) (dismissing civil RICO claims because "[n]othing in the allegations or the agreed statement of facts indicate[d] that the [defendants' alleged] scheme . . . was formulated to accomplish more than one discrete goal or to continue after that goal was achieved"). Instead, Page's RICO claims represent nothing more than an "unsuccessful effort to dress a garden-variety [defamation] case in RICO clothing."  *Condict*, 826 F.2d at 929.[9]

## IV.    THE COURT SHOULD DISMISS PAGE'S PENDENT STATE CLAIMS ON SUBSTANTIVE GROUNDS

"'When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.'"  *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quotation marks omitted); *see also U.S. v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002) ("[A] district court should normally dismiss supplemental state law claims after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial.").  Here, because Page has not stated a plausible claim under federal law, there is no need for this Court to address Page's state law claims—and it should decline to do so.   But even if the Court decides to consider Page's claims for defamation and tortious interference, the Complaint is devoid of facts supporting those state law claims—and dismissal is warranted in any event.

---

[9] Because Page fails to establish a substantive RICO claim under 18 U.S.C. § 1962(c), his § 1962(d) conspiracy claim necessarily fails as well.  *See BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999) ("A conspiracy claim under 18 U.S.C. § 1962(d) fails when the substantive claim based on § 1962(c) is without merit.").

### A.    Page's Defamation Claim Is Time-Barred

The statute of limitations for a defamation claim in Oklahoma is one year, running from the time of publication.  OKLA. STAT. tit. 12, § 95(4).  "Although the statute of limitations is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss 'when the dates given in the complaint make clear that the right sued upon has been extinguished.'"  *Billinger v. Weinhold*, 531 F. App'x 928, 929 (10th Cir. 2013); *see also Boettcher v. Conoco Phillips Co.*, No. CIV-16-1128-HE, 2017 WL 5244799, at *3 (W.D. Okla. Apr. 24, 2017) (dismissing plaintiffs' complaint pursuant to Rule 12(b)(6) on the ground that plaintiffs' claims were barred) (Heaton, J.).

Crediting all allegations in his Complaint, Page fails to identify a single statement published by Defendants within one year of his filed lawsuit.  To the contrary, Page expressly alleges that Defendants' defamatory statements were made "between approximately June 2016 through at least September 2016."  Compl. ¶ 1.  In the remaining 37 pages of the Complaint, Page does not allege the dates that Defendants published any false and defamatory statements, but Page's complained-of conduct purportedly resulted in a September Yahoo News Article and, *at best*, the January 10, 2017 BuzzFeed Article that published the Steele Dossier.  Both of those publications occurred over eighteen months prior to the filing of this lawsuit, well after the limitations period expired.

While Oklahoma recognizes a "discovery rule" that tolls applicable statutes of limitations in limited situations, those circumstances are reserved for instances where "the publication is likely to be concealed from plaintiff or is published in secretive manner that would make it unlikely to come to plaintiff's attention."  *Johnson v. National Carriers,*

*Inc.*, No. CIV-06-802-F, 2006 WL 3300761, at *3 (W.D. Okla. Nov. 13, 2006). "Exceptions to statutes of limitation are strictly construed and are not enlarged on consideration of apparent hardship or inconvenience." *Resolution Tr. Corp. v. Grant*, 901 P.2d 807, 813 (Okla. 1995).  As the Oklahoma Supreme Court recently explained, "[t]he purpose of the rule is to exclude the period of time during which the injured party is reasonably unaware that an injury has been sustained so that people in that class have the same rights as those who suffer an immediately ascertainable injury." *Calvert v. Swinford*, 382 P.3d 1028, 1033 (Okla. 2016); *see also Woods v. Prestwick House, Inc.*, 247 P.3d 1183, 1191 (Okla. 2011) ("The central question in deciding whether the statute of limitations has expired for [plaintiff's] claims is when he knew or should have known that he suffered injury."); *Joplin v. Sw. Bell Tel. Co.*, 753 F.2d 808, 810 (10th Cir. 1983) (finding defamation claim was barred by the statute of limitations because "plaintiff admitted that he was aware" of the allegedly defamatory publication); *Johnson v. National Carriers, Inc.*, 2006 WL 3300761, at *3 (applying Oklahoma statute of limitations to bar claim as time-barred because *pro se* plaintiff knew of allegedly defamatory statement prior to one-year before filing his complaint).

The discovery rule is inapplicable here.  As the Complaint makes clear, Page was aware of Defendants' purported publication of these statements as early as July 2016, when he received text messages from news sources seeking information regarding the two alleged meetings.  Compl. ¶ 18.  Page concedes that these text messages gave Page "advanced warning" of the allegedly defamatory statements originating from Defendants. *Id.*  And as Page pleads, the publication of the Yahoo Article and BuzzFeed Article in

25

September 2016 and January 2017, respectively, alerted him to the purportedly defamatory statements underlying the reports. *Id.* ¶¶ 18, 31. Page further alleges that he was aware—or could have been aware—of proceedings in May 2017 in the United Kingdom wherein Mr. Steele further explained that he was the individual to have briefed several news outlets related to the "Steele Dossier." *Id.* ¶ 29. And months later, in September 2017, Page filed a lawsuit predicated on this very same set of facts, in which he even blamed "the Clinton Campaign" as the source of, or proliferators of, the purported defamatory statements. *See* Oath Complaint ¶¶ 32-33, 52.

In short, Page knew of the statements made and the purported injuries from those statements, and indeed, filed a prior lawsuit relating to those statements within the statutory period. He failed, however, to sue any of the Defendants within the necessary limitations period. Page's time has therefore run, and his defamation claims should be dismissed.

### B.   Page Fails to Plausibly Allege Defamation

In order to state a plausible claim for defamation in Oklahoma, Page, who is a public figure, must show: "(1) [t]he publication of a defamatory statement, (2) that was false, and (3) was made with 'actual malice,' that is with knowledge that it was false or was made with reckless disregard of whether or not it was false." *Grogan v. KOKH, LLC*, 256 P.3d 1021, 1027 (Okla. Civ. App. 2011) (quoting *Hart v. Blalock*, 932 P.2d 1124, 1126 (Okla. 1997)). A plaintiff must provide statements of fact beyond mere "labels and conclusions or a formulaic recitation of the elements of a cause of action" in order to state a "plausible claim for relief." *Iqbal*, 556 U.S. at 678-79 (quotation marks omitted); *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1137 (10th Cir. 2014) (applying *Iqbal* to

26

analysis of defamation claim).[10]   Page's claim fails on several grounds.

*First*, Page utterly fails to provide Defendants with "sufficient notice of the communications complained of to allow" for an adequate defense.   *Hetronic Int'l Inc. v. Rempe*, 99 F. Supp. 3d 1341, 1349-50 (W.D. Okla. 2015).   A plaintiff must plead with particularity "what statement was made, who made it or what was false about it."   *Jencks v. Cole*, No. CIV-15-0164-HE, 2015 WL 3460545, at *5 (W.D. Okla. May 27, 2015) (dismissing slander claim for lack of sufficient notice).   While Page generally alleges that Defendants provided "false information funded and distributed by Defendants," Compl. ¶15, the Complaint makes no effort to put each individual Defendant on notice as to their purported conduct, what statements were made by each Defendant, and to whom they were made.   *Id*. ¶¶ 22, 28, 29, 32, 33.   Without alleging who "made and published a false statement," Defendants are deprived of notice as to their purportedly tortious conduct.   *See Jencks*, 2015 WL 3460545, at *5.

Moreover, the statements about which Page complains are not defamatory, in that they do not "tend[] to so harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."   *Herbert v. Okla. Christian Coal.*, 992 P.2d 322, 327 n.4 (Okla. 1999).   As Page makes clear throughout his Complaint, Page has significant business and political ties to Russia.   *See*

---

[10] If Page were not a public figure—which he is—he would need to allege "fault amounting at least to negligence on the part of the publisher" and "either the actionability of the statement irrespective of special damage, or the existence of special damage caused by the publication."   *See Springer v. Richardson Law Firm*, 239 P.3d 473, 475 (Okla. Civ. App. 2010).   Aside from his conclusory pleadings, Page's complaint fails to satisfy these requirements as well.

Compl. ¶¶ 7, 46, 78-80 (citing Page's business interests "as a trusted advisor and partner" with Russian-based international energy companies and his trips to Russia as a "scholar in foreign policy").   Indeed, Page publicly admitted to these close ties, including during several of the very reports he cites in his Complaint.  *See id*. ¶ 39 n.101, 103.[11]  Page even went so far as to say, in an interview with ABC News (cited in the Complaint), that "it would have been an honor to meet Igor Ivanovich [Sechin], but I never had the opportunity."   ABC News, "Former associate denies being Trump Russia middleman" at 1:54 (Feb. 2, 2017), *available at* https://abcnews.go.com/US/video/associate-denies-trump-russia-middle-man-45216480 (admitting that Page had "been in various presentations by [Sechin]").   In short, far from believing such Russian contacts were embarrassing or defamatory, Page believed they were an "honor," and sought out and cultivated these connections.  That these ties to Russia were also of significant interest to media publications and law enforcement due to the allegations (and conclusions) of Russian hacking does not—of themselves—make them defamatory.   *Sellers v. Okla. Publ'g Co.*, 687 P.2d 116, 120 (Okla. 1984) ("No artificial and unreasonable construction of the words can add a defamatory meaning not fairly to be found in the light of the

---

[11] Page admits to meeting with Russian politicians and ambassadors on other occasions in the interviews cited in the Complaint's footnotes.  *See* MSNBC, "Carter Page: 'I don't deny' meeting with Russian Ambassador" at 4:30 (Mar. 2, 2017) available at https://www.msnbc.com/all-in/watch/carter-page-i-don-t-deny-meeting-with-russian-ambassador-889043011736?v=railb& ("I'm not going to deny that I talked to [Sergey Kislyak]"); ABC News, "Former associate denies being Trump Russia middleman" at 1:54 (Feb. 2, 2017) available at https://abcnews.go.com/US/video/associate-denies-trump-russia-middle-man-45216480 (admitting that Page had "been in various presentations by [Sechin]").

circumstances" and "no mere claim of the plaintiff can add a defamatory meaning where none is apparent from the publication itself.").

Finally, as a public figure, Page fails to plausibly plead that any Defendants acted with "actual malice," as required by law. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). Actual malice requires a showing of "knowledge that [the statement was] false or with reckless disregard of whether it was false or not." *Id.* at 281.

Whether a plaintiff is a public figure is a question of federal law and is not "determined by reference to state law standards." *Strong v. Oklahoma Publ'g Co.*, 899 P.2d 1185, 1188 (Okla. Civ. App. 1995). Public figures are those who "assume special prominence in the resolution of public questions." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974). A public figure is either one who (1) achieves such personal fame and notoriety that he becomes a public figure for all purposes; or (2) voluntarily becomes involved or is drawn into a public controversy and thereby becomes a public figure as to the issues involved in that controversy (i.e., a "limited purpose" public figure). *See id*. Page—who volunteered as a foreign policy advisor to a presidential candidate, was publicly identified by then-candidate Trump as an advisor, and gave public speeches regarding Russian policy—is undoubtedly a public figure or, at least, limited public figure, and courts analyzing similar individuals, particularly in the context of political campaigns, have routinely found as much. *See, e.g.*, *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 587 (D.C. Cir. 2016) (a plaintiff who "was an outspoken supporter, financial backer, and advisor of" the Prime Minister of Serbia was a public figure), *cert. denied*, 137 S. Ct. 1434 (2017); *Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 142 (D.D.C. 2017) (granting

motion to dismiss and finding Deripaska—a Russian oligarch—to be a limited-purpose public figure given his relationship with the Trump campaign).[12]

As a public figure or limited-purpose public figure, Page must plausibly allege facts sufficient to show that statements made by Defendants were made with "actual malice." Although the Tenth Circuit has not had the opportunity to address the pleading standard for malice post-*Iqbal*, other circuits have unanimously held that a plaintiff may not simply recite in conclusory fashion the pleading standard in order to survive a motion to dismiss. *See Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015); *Pippen v. NBC Universal Media, LLC*, 734 F.3d 610, 612, 616 (7th Cir. 2013); *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing*, 674 F.3d 369, 373 (4th Cir. 2012); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). Recitations of the legal standard will not suffice, and Page must plausibly allege that Defendants acted with "actual knowledge of probable falsity" for the truth of the statements made. *Jurkowski v. Crawley*, 637 P.2d 56, 60 (Okla. 1981). He has failed to do so.

Instead, Page proffers a litany of conclusory allegations that merely recite the pleading standard. For instance, he states that, with respect to the statements regarding

---

[12] Courts employ a three-part inquiry in determining whether a plaintiff is a limited-purpose public figure—assessing whether: (1) the relevant controversy is a "public controversy"; (2) the plaintiff played a "significant role in that controversy" or "thrust himself to the forefront of the public controversy at issue"; and (3) the defamatory statement is "germane to the plaintiff's participation in the controversy." *Choctaw Town Square, LLC v. KOKH Licensee, LLC*, 2015 WL 11661754, at *7 (W.D. Okla. June 18, 2015). Here, the fact that Page volunteered as a foreign policy advisor with a specialty in Russia and was a central focus of the Trump campaign's alleged Russia ties satisfies each prong. *See, e.g.*, *Deripaska*, 282 F. Supp. 3d at 142.

Page, the statements "were so inherently improbable that only a reckless man . . . would have put them in circulation."  Compl. ¶ 27.  But Page provides no facts to show why such statements were, on their face, "inherently improbable."  *Id.*  Similarly, Page claims none of the Defendants' "activities were fulfilled in a fashion that accords with standards observed in the legal or media professions," *id.* ¶ 12, that Defendants used "acknowledged methodologies of smearing innocents through the deployment of private investors and spin doctors," and that Defendants failed to investigate their statements before publishing them, *id.* ¶¶ 28, 35.  Such bare claims—pleaded on information and belief—are insufficient to carry these allegations within the sphere of plausibly pleaded malice.  *See Krimbill v. Talarico*, 417 P.3d 1240, 1253-54 (Okla. Civ. App. 2017).  As such, Page's defamation claim must be dismissed.

### C.    Page Fails to Allege an Actionable Tortious Interference Claim

Page's tortious interference claim fares no better.  "Oklahoma recognizes a tortious interference claim with a contractual or business relationship if the plaintiff can prove (1) the interference was with an existing contractual or business right; (2) such interference was malicious and wrongful; (3) the interference was neither justified, privileged nor excusable; and (4) the interference proximately caused damage."  *Wilspec Techs., Inc. v. Dunan Holding Grp. Co.*, 204 P.3d 69, 74 (Okla. 2009).  Page has not alleged facts to establish any, much less each, of those elements.

First, while Page makes vague reference to "existing and prospective business relationships" he supposedly had "with energy companies and financial institutions," Compl. ¶ 78, he fails to identify any particular contractual or business relationship that was

actually harmed as a result of Defendants' alleged misconduct.  The Court should dismiss Page's claim on that basis alone.  *See Joint Tech., Inc. v. Weaver*, No. CIV-11-846-M, 2011 U.S. Dist. LEXIS 149339, at *7 (W.D. Okla. Dec. 29, 2011) (dismissing tortious interference claim where plaintiff failed to allege an existing contractual or business right); *Mac Adjustment, Inc. v. Prop. Loss Research Bureau*, 595 P.2d 427, 428 (Okla. 1979) (same where plaintiff "failed to show that it lost any business as a proximate result of [the defendant's alleged] actions").

Second, Page fails to allege any facts establishing that Defendants acted with the requisite level of intent—that is, "for the purpose and with the intention of destroying [Page's] established business." *Stebbins v. Edwards*, 224 P. 714, 715 (Okla. 1924); *see also Morrow Dev. Corp. v. Am. Bank & Tr. Co.*, 875 P.2d 411, 416 (Okla. 1994) ("Malice, as part of the second element of this tort, is the intentional performance of a wrongful act without justification or excuse.").  Beyond stating, in conclusory fashion, that Defendants "intentionally and unjustifiably interfered" with Page's business relationships, Compl. ¶ 79, Page fails to "plead sufficient *factual* matter to *show* that [Defendants'] interference, if any, with [any unspecified] contract . . . was both intentional and improper." *PCH Radiology, PC v. Eagle Eye Radiology, Inc.*, No. CIV-09-553-W, 2009 U.S. Dist. LEXIS 140339, at *10-11 (W.D. Okla. Nov. 3, 2009) (emphasis added).  Rather, Page's "contentions in this connection are at most '[t]hreadbare recitals of the elements of [his] . . . cause of action, supported by mere conclusory statements.'" *Id.* at *11 (citation omitted).

At base, Page cannot simply recast his non-actionable defamation claim as a tortious interference claim.  *See Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Inv'r's Servs., Inc.*,

175 F.3d 848, 856-57 (10th Cir. 1999) (noting that "federal courts have . . . reject[ed] a variety of tort claims based on speech protected by the First Amendment," including "claims for intentional interference with contract"). Page's tortious interference claim is predicated on the same alleged "distribution of false information" underlying his defamation cause of action, Compl. ¶ 80, and both state law claims fail by virtue of the same pleading deficiencies.

## V.      THE COURT SHOULD DENY PAGE LEAVE TO AMEND

Should the Court dismiss Page's action on the merits, rather than based on the Complaint's numerous jurisdictional defects, dismissal should be with prejudice. Federal Rule of Civil Procedure 15(a)(2) instructs that leave to amend should be freely given, but only where justice so requires. "A district court may deny leave to amend upon 'a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.'" *Warnick v. Cooley*, 895 F.3d 746, 755 (10th Cir. 2018) (citation omitted). This case is, in many respects, Page's second bite at the proverbial apple. Page's action in the Southern District of New York also included claims for ATA violations, defamation, and tortious interference, *Page v. Oath, Inc.*, 2018 WL 1406621, at *4 (S.D.N.Y. Mar. 20, 2018), and many of the substantive defects of this Complaint were apparent in Page's prior pleadings in that case—which the court there rightly dismissed with prejudice. Here too, there is no reason to believe that dragging out this lawsuit will yield a colorable claim of any kind. Defendants respectfully request that the Court dismiss Page's Complaint with prejudice.

**VI.     CONCLUSION**

For the reasons stated above, Page's Complaint should be dismissed in its entirety, with prejudice.

 Dated: November 21, 2018

Respectfully submitted,

/s/ Kathryn Ruemmler
George S. Corbyn, Jr. (OBA number 1910)
CORBYN HAMPTON BARGHOLS
PIERCE, PLLC
211 North Robinson, Suite 1910
One Leadership Square
Oklahoma City, Oklahoma  73102
Telephone: (405) 239-7055
gcorbyn@corbynhampton.com

Kathryn Ruemmler (*pro hac vice*)
Stephen P. Barry (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C.  20004
Telephone: (202) 637-2200
kathryn.ruemmler@lw.com
stephen.barry@lw.com

Nicholas L. McQuaid (*pro hac vice*)
Matthew S. Salerno (*pro hac vice*)
LATHAM & WATKINS LLP
885 Third Avenue,
New York, N.Y. 10022
Telephone: (212) 906-1200
nicholas.mcquaid@lw.com
matthew.salerno@lw.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel registered for ECF.

/s/ Kathryn Ruemmler
George S. Corbyn, Jr. (OBA number 1910)
CORBYN HAMPTON BARGHOLS
PIERCE, PLLC
211 North Robinson, Suite 1910
One Leadership Square
Oklahoma City, Oklahoma  73102
Telephone: (405) 239-7055
gcorbyn@corbynhampton.com

Kathryn Ruemmler (*pro hac vice*)
Stephen P. Barry (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C.  20004
Telephone: (202) 637-2200
kathryn.ruemmler@lw.com
stephen.barry@lw.com

Nicholas L. McQuaid (*pro hac vice*)
Matthew S. Salerno (*pro hac vice*)
LATHAM & WATKINS LLP
885 Third Avenue,
New York, N.Y. 10022
Telephone: (212) 906-1200
nicholas.mcquaid@lw.com
matthew.salerno@lw.com

*Attorneys for Defendants*