**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

CARTER PAGE,

               Plaintiff,

v.

DEMOCRATIC NATIONAL
COMMITTEE; PERKINS COIE LLP;
MARC ELIAS; AND MICHAEL
SUSSMANN,

               Defendants.

Case No. CIV-18-1019-HE

**REPLY IN SUPPORT OF DEFENDANTS' MOTION**
**TO DISMISS COMPLAINT UNDER RULES 12(B)(1), 12(B)(2), AND 12(B)(6)**

## I.       INTRODUCTION

Plaintiff Carter Page's Opposition ("Opp.") still fails (and largely does not even try) to remedy the overarching and fatal defect of his Complaint—namely, a demonstrable lack of *both* personal jurisdiction over the Defendants and subject-matter jurisdiction over Page's claims.  Neither his Complaint nor his Opposition establishes any Defendant's meaningful ties to Oklahoma, and Page does not even attempt to provide a cogent theory as to how any Defendant "targeted" Oklahoma to establish personal jurisdiction.  Moreover, Page fundamentally misapprehends the requirements of both federal question and diversity jurisdiction—neither of which is present here.  Either jurisdictional defect independently warrants dismissal.

Instead, Page doubles down on the recycled conspiracy theories and conclusory allegations that a New York federal court already rejected in 2017.  But even if Page could satisfy his jurisdictional burden, his substantive allegations are still plainly deficient to pass Rule 12(b)(6) muster.  Substituting a stream of political commentary in place of meaningful legal analysis, Page introduces a flurry of new accusations and conspiracy theories in his brief that only underscore the defects of his actual claims.  Simply put, Page does not—and cannot—point to alleged facts sufficient to state any plausible cause of action, and his Complaint should be dismissed with prejudice accordingly.

## II.      PAGE FAILS TO ESTABLISH JURISDICTION

As Page's Opposition confirms, this Court need proceed no further than a threshold jurisdictional inquiry to properly dispose of this case.  Page makes no effort *at all* to explain why general personal jurisdiction exists with respect to three of the four Defendants—

Perkins Coie LLP ("Perkins Coie"), Marc Elias, and Michael Sussmann.  And the most he can muster as to the Democratic National Committee ("DNC") is a general association with Oklahoma's state democratic party.  But the DNC's relatively modest in-state activities fall well short of rendering the DNC "at home" in Oklahoma.  Likewise, Page's attempt to establish specific personal jurisdiction on the sole basis that *Page*—as the managing partner of an Oklahoma company—was a purported focus of Defendants' alleged actions ignores that a *plaintiff's* forum relationship is all but irrelevant to the jurisdictional analysis.

Page fares no better on subject-matter jurisdiction.  He guesses at the citizenship of multiple Defendants, and admits that he presently is either stateless or shares a New York citizenship with numerous Perkins Coie partners—both of which defeat diversity among the parties.  And instead of addressing his failure to state a viable federal-law claim sufficient to support federal question jurisdiction, Page imagines new theories based on the allegedly unconstitutional activities of third parties—none of whom is named as a defendant in this case.  This case should be dismissed on jurisdictional grounds.

A.  **Page Offers Zero "Competent Proof" of Defendants' Forum Contacts and Therefore Fails to Establish General Personal Jurisdiction**

For starters, Page's Opposition—like his Complaint—makes no mention of *any* Oklahoma contacts on the part of any Defendant, with the lone exception of the DNC.  Page therefore concedes that Perkins Coie and Messrs. Sussmann and Elias are not subject to general jurisdiction in this Court.  *See* Defs.' Opening Br. at 10.

With respect to the DNC, the sole evidence Page cites is the fact that the DNC provides monthly financial contributions to Oklahoma's state democratic party—*just as*

*the DNC financially supports democratic party affiliates in all other 49 states*.  *See* Opp. at 14 ("[The DNC's] Oklahoma Democratic Party affiliate announced earlier last year that beginning in October 2017, '*all state parties* will receive a monthly $10,000 investment from the DNC through 2018.'" (emphasis added)).  If such a generic forum association were enough, the DNC would be subject to all-purpose jurisdiction in every federal court in the country.  That cannot be—and is not—the law.  *See Daimler AG v. Bauman*, 571 U.S. 117, 139 n.20 (2014) ("A corporation that operates in many places can scarcely be deemed at home in all of them.").  The question "is not whether a [defendant's] in-forum contacts can be said to be in some sense continuous and systematic, it is whether that corporation's affiliations with the State are so continuous and systematic as to render it ***essentially at home in the forum State***." *Id.* at 137-139 (emphasis added).  Here, Page's reliance upon the DNC's mere intermittent forum activities and limited relationship with the state party confirm the obvious—that the DNC is decidedly not "at home" in Oklahoma. *See* Defs.' Opening Br. at 9-11.  Accordingly, general jurisdiction is inapplicable.

### B.    Page's Novel Theories of Specific Jurisdiction are Patently Deficient

Page flatly ignores Defendants' arguments as to specific jurisdiction.  *See* Defs.' Opening Br. at 11-13.  Making no attempt to show that Defendants *purposefully directed* their alleged activities toward Oklahoma and that his claims *arise out of* Defendants' forum contacts, as the law requires, Page instead conjures new theories that are untethered to his Complaint and legally irrelevant in any event.  Page newly suggests, for example, that Defendants' alleged defamation somehow precipitated the decision of the U.S. Foreign Intelligence Surveillance Court ("FISC") to approve governmental surveillance of Page

3

following the 2016 presidential election, and argues that such monitoring "so clearly offended all traditional notions of 'fair play and substantial justice'" that the propriety of personal jurisdiction is "readily self-evident." Opp. at 12. But constitutional fairness is not about the supposed gravity of the conduct alleged; it turns on whether a defendant may fairly be haled before a specific forum's courts. *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004). Here, because Page fails to establish *any* Defendant's substantial Oklahoma nexus, he cannot meet his burden even at the first step of the analysis.

Page's other scattershot arguments warrant only brief mention:

- Page claims that the U.S. Attorney for the District of Utah's review of allegations of FBI misconduct "add[] to the inherent appropriateness of the Tenth Circuit jurisdiction." Opp. at 12. But a supposed inquiry by a governmental agency in a *different* state has no bearing on jurisdiction in Oklahoma.

- Page appears to argue that because his Complaint was properly served, jurisdiction is proper. *See id.* at 25. But compliance with statutory service-of-process rules does not dictate whether a defendant's forum contacts render jurisdiction constitutionally appropriate. *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (distinguishing between "whether any applicable statute authorizes the service of process on defendants" and "whether the exercise of such statutory jurisdiction comports with constitutional due process demands").

- Page asserts that a lawsuit in Oklahoma state court involving members of the local Democratic party somehow exposes the DNC to jurisdiction in the State. *See* Opp. at 15. But the case Page cites, involving a Tulsa city redistricting plan, has nothing to do with the DNC or any of the facts alleged in this action.

- Page contends that jurisdiction is proper because Defendants' "activities with the FISC and the media" caused him to suffer "life-threatening damages . . . at his principal place of business in Oklahoma." *Id.* at 14-15. But the Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff . . . and the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014); *see* Defs.' Opening Br. at 13.

- Finally, Page argues that *venue* is proper here because, in light of purported "threats" he is facing "in New York State" and elsewhere, there is "likely" no other court in

4

which this case could be brought.  Opp. at 15.  That argument is not only legally irrelevant to the jurisdictional question, *see United States v. 51 Pieces of Real Prop.*, 17 F.3d 1306, 1310 (10th Cir. 1994) ("Venue . . . is distinct from jurisdiction.");[1] it disingenuously ignores that Page *did* file suit in New York—asserting virtually identical claims against different defendants—last year, which was dismissed with prejudice, *see Page v. Oath Inc.*, at *4, 2018 WL 1406621 (S.D.N.Y. Mar. 20, 2018).

At base, Page's response is remarkable for all it does not say.  Page makes no mention of any forum contacts on the parts of Perkins Coie, Mr. Elias, or Mr. Sussmann. He glosses over the limited extent of the DNC's in-forum contacts.  And he simply ignores that none of the alleged activities giving rise to his claims occurred in Oklahoma.  On that basis alone, the Court should dismiss this case for want of personal jurisdiction.

## C.   Page Fails to Establish Federal Subject-Matter Jurisdiction

### 1.   Page Concedes He Lacks Citizenship or Cannot Establish Diversity

Despite Page's conclusory proclamations to the contrary, *see* Opp. at 18, diversity of citizenship in this case is anything but absolute.  For his part, Page continues to disclaim any present domicile based on his "fugitive lifestyle." *Id.* at 7.  If Page is in fact "stateless," then he necessarily cannot rely on diversity jurisdiction.  *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828-29 (1989) ("stateless" party "destroyed complete diversity").

At the same time, Page concedes that New York was his "home state" before adopting this supposedly transient status.  Opp. at 7; *see* Defs.' Opening Br. at 16.  It is black-letter law that an individual's "domicile once acquired is presumed to continue until it is shown to have been changed." *Mitchell v. U.S.*, 88 U.S. 350, 353 (1874).  Here, to the extent Page remains a citizen of New York, where multiple Perkins Coie partners also are

---

[1] Even if jurisdiction were somehow present here (and clearly it is not), Page has offered no basis to find that venue would be proper in this Court.  *See* 28 U.S.C. § 1391.

domiciled,[2] he cannot demonstrate diversity of citizenship.

In an apparent effort to overcome these obstacles, Page makes a vague suggestion that he intends "eventually" to establish residence in Oklahoma at some unspecified time— "once the threats against his life are eventually resolved." Opp. at 7. But Page's self-serving assertion of a "future intention to possibly or probably effect a change of domicile" is irrelevant. *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 367 (1st Cir. 2001); *see also Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) (domicile requires a contemporaneous "physical presence in a place" and an "intent to remain there").

Finally, and in any event, Page's brief reinforces his failure to establish the citizenship of each *Defendant*, as required. Page hinges Perkins Coie's citizenship on its principal place of business in Washington state, and surmises that Messrs. Elias and Sussmann likely live "in the District of Columbia, Maryland, Virginia or some other jurisdiction near" their offices in Washington, D.C. Opp. at 18. But, as a partnership, Perkins Coie's headquarters does not dictate its citizenship; nor does Page's speculation as to Messrs. Elias and Sussmann's possible residences suffice. Absent a clear indication of each Defendant's citizenship, "the Court has no basis to exercise diversity jurisdiction over this case." *Weston v. Weston*, 2008 WL 4058027 at *3 (N.D. Okla. Aug. 26, 2008).

**2.**      Page's Failure to Allege a Plausible Claim Under Federal Law Forecloses Federal Question Jurisdiction

Federal question jurisdiction exists only where "a substantial . . . question of federal

---

[2] S*ee* Defs.' Opening Br. at 16 n.6. Approximately 25 of Perkins Coie's partners reside in the firm's New York office. *See* https://www.perkinscoie.com/en/professionals/.

law [is] present on the face of [a] well-pleaded complaint." *SFF-TIR, LLC v. Stephenson*, 250 F. Supp. 3d 856, 966 n.72 (N.D. Okla. 2017).   Here, Page has not alleged facts sufficient to state a plausible federal claim, *see* Section III *infra*—and his apparent effort to contest the constitutionality of third-party "surveillance intrusions" purportedly "caused by the Defendants[']" alleged actions (Opp. at 17) is irrelevant to the jurisdictional inquiry. Federal question jurisdiction is therefore inapplicable, and Page's failure to establish jurisdiction over the subject-matter of this action independently mandates dismissal.

## III.   PAGE FAILS TO STATE A VIABLE CAUSE OF ACTION

This Court need not reach the merits of Page's claims.   But regardless, Page's 35-page brief only confirms that the personal and political grievances which led him to file this lawsuit have nothing to do with the facts and claims actually alleged in the Complaint. Page devotes most of his Opposition to describing the supposed "injustices" he suffered as a result of "unconstitutional civil rights abuses" carried out by "the USG [United States Government]" as part of a "state-sponsored surveillance operation against" him, and strains to somehow link those "injustices" to Defendants.   Opp. at 18-19.   But Page's misguided attempt to inject new and irrelevant facts only underscores that the allegations set forth in his Complaint are woefully inadequate to state a viable claim. [3]

### A.   Terrorism Claims

With respect to his claims under the federal Anti-Terrorism Act ("ATA"), Page

---

[3] Page's newly-contrived allegations are not only factually irrelevant, but also procedurally improper.   *See Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995) ("[I]n determining whether to grant a motion to dismiss, the district court . . . [is] limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint.").

largely abandons his original factual allegations in favor of novel accusations against third-parties not named as defendants in this case—including the FBI and Christopher Steele. *See* Opp. at 21-22.  But the supposed actions of these outside parties—virtually none of which is alleged in the Complaint—cannot support a claim against Defendants.[4]

In any event, Page continues to argue that any purported misconduct and resulting injury occurred primarily *within* the United States.  *See, e.g.*, Opp. at 7 (describing alleged "Domestic Terror threats . . . in [Page's] former home state of New York").  His ATA claim therefore fails on its face.  *See* Defs.' Opening Br. at 18-20.

## B.    RICO Claims

Page similarly attempts to reinvent his RICO claims, citing several new purported predicate crimes—including false declarations, acts of terrorism, and fraud, *see* Opp. at 25-26—that "were not pleaded in the complaint," *Kearney v. Dimanna*, 195 F. App'x 717, 721 n.2 (10th Cir. 2006), and in any event are not remotely supported by the facts alleged. Indeed, Page effectively (and unsurprisingly) discards his actual allegations.  His brief makes no mention of Defendants' purported theft of "trade secrets," and his lone arguments concerning Defendants' alleged acts of obstruction and "economic espionage" focus solely on alleged misconduct by non-party actors.  *See, e.g.*, Opp. at 27.  Without a single plausibly alleged predicate act by any Defendant (let alone a "pattern" of racketeering

---

[4] *See Estate of Parsons v. Palestinian Auth.*, 651 F.3d 118, 122 (D.C. Cir. 2011) ("[T]o prevail, a plaintiff must prove that the *defendant* would have violated any one of a series of predicate criminal laws had *the defendant* acted within the jurisdiction of the United States.") (emphases added); *Taamneh v. Twitter, Inc.*, 2018 WL 5729232, at *4 (N.D. Cal. Oct. 29, 2018) ("[T]he ATA provides only for primary or direct liability.").

activity), Page's RICO claims necessarily cannot stand.  *See* Defs.' Opening Br. at 21-22.

### C.   Defamation Claim

Page likewise fails to address any of Defendants' substantive arguments as to why his defamation claim cannot proceed.  *First*, the "discovery rule" cannot revive Page's time-barred allegations because that exception "tolls the statute of limitations only 'until the injured party knows, or . . . should have known of the *injury*.'"  *Ballard v. Johnson & Johnson*, 2014 WL 5341851, at *5 (N.D. Okla. Oct. 20, 2014) (internal citations omitted).  Page concedes that he knew about the offending statements back when they were published in 2016, or, at the latest, when he filed an identical (failed) complaint in New York federal court in early 2017.  Compl. ¶¶ 18, 31; *see also* Defs.' Opening Br. at 1.

*Second*, Page offers no credible reason to deem him a "private" figure.  The facts remain that (i) Page was one of four foreign policy advisors to the Republican nominee for President—a matter of national importance and interest; (ii) Mr. Trump thrust Page into the spotlight by naming him a key advisor; and (iii) Page, while advising Mr. Trump, delivered numerous controversial speeches viewed as pro-Russia and critical of the United States, which predictably garnered widespread media coverage.  *See* Compl. ¶ 80; *Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 142 (D.D.C. 2017) (Russian oligarch was limited-purpose public figure given connections to Putin and Trump campaign).[5]

---

[5] Page's cited cases stand in stark contrast.  *See, e.g.*, *Lawrence v. Moss*, 639 F.2d 635, 637 (10th Cir. 1981) (private figure plaintiff "made no speeches and no radio or television appearances and did not write for public consumption"); *Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979) (plaintiff "at no time assumed any role of public prominence"); *Wolston v. Reader's Digest Ass'n, Inc.*, 443 U.S. 157, 165-66 (1979) (plaintiff received no media attention prior to being "dragged unwillingly into the controversy").

*Finally*, Page makes no effort to clarify his vague and conclusory allegations concerning Defendants' purportedly defamatory statements.  Page cites a single irrelevant case, interpreting *Florida law*, in response to Defendants' argument that the statements he challenges did not harm Page's reputation.  *See* Opp. at 33.[6]  But Page accepts that he has significant business and political ties to Russia, *see* Compl. ¶¶ 46, 78-80, and fails to plead reputational harm as Oklahoma law requires.  Both deficiencies defeat Page's claim.

### D.   Tortious Interference

Page devotes less than a page to his tortious interference claim, offering only a broad-brushed assertion that the "illegal surveillance of the Plaintiff that stemmed from . . . 'opposition research' funded, enabled and managed by the Defendants" "discouraged all parties" from doing business with him and caused "extraordinary harm."  Opp. at 34.  But Page does not allege—and cannot identify—a single contract or specific business relationship that was impacted by Defendants' alleged "opposition research," and thus fails to plead even the most basic element of a tortious interference claim.  *See Cross Media Works, Inc. v. Reid*, 2010 WL 4811758, at *3 (W.D. Okla. Nov. 19, 2010).

### IV.   CONCLUSION

For these and the further reasons stated in Defendants' Opening Brief, Defendants respectfully request that the Court dismiss Page's Complaint with prejudice.

---

[6] Oklahoma—not Florida—law governs Page's claims, and requires Page to establish reputational harm, which he has not done. *Compare Time, Inc. v. Firestone*, 424 U.S. 448, 460 (1976) ("Florida has . . . decided to permit recovery for other injuries without regard to measuring the effect the falsehood may have had upon a plaintiff's reputation."), *with Herbert v. Okla. Christian Coal.*, 992 P.2d 322, 327 n.4 (Okla. 1999) ("A communication is defamatory if it tends to so harm the reputation of another. . . .").

Dated: January 18, 2019

Respectfully submitted,

 /s/ Kathryn H. Ruemmler

George S. Corbyn, Jr. (OBA number 1910)
CORBYN HAMPTON BARGHOLS
PIERCE, PLLC
211 North Robinson, Suite 1910
One Leadership Square
Oklahoma City, Oklahoma  73102
Telephone: (405) 239-7055
gcorbyn@corbynhampton.com

Kathryn H. Ruemmler (*pro hac vice*)
Stephen P. Barry (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C.  20004
Telephone: (202) 637-2200
kathryn.ruemmler@lw.com
stephen.barry@lw.com

Nicholas L. McQuaid (*pro hac vice*)
Matthew S. Salerno (*pro hac vice*)
LATHAM & WATKINS LLP
885 Third Avenue,
New York, N.Y. 10022
Telephone: (212) 906-1200
nicholas.mcquaid@lw.com
matthew.salerno@lw.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2019, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel registered for ECF.

/s/ Kathryn Ruemmler
George S. Corbyn, Jr. (OBA number 1910)
CORBYN HAMPTON BARGHOLS
PIERCE, PLLC
211 North Robinson, Suite 1910
One Leadership Square
Oklahoma City, Oklahoma  73102
Telephone: (405) 239-7055
gcorbyn@corbynhampton.com

Kathryn Ruemmler (*pro hac vice*)
Stephen P. Barry (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C.  20004
Telephone: (202) 637-2200
kathryn.ruemmler@lw.com
nicholas.mcquaid@lw.com
stephen.barry@lw.com

Nicholas L. McQuaid (*pro hac vice*)
Matthew S. Salerno (*pro hac vice*)
LATHAM & WATKINS LLP
885 Third Avenue,
New York, N.Y. 10022
Telephone: (212) 906-1200
matthew.salerno@lw.com

*Attorneys for Defendants*

12