UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CARTER PAGE,<br>　　　　　　　Plaintiff,<br><br>-v-<br><br>DEMOCRATIC NATIONAL<br>COMMITTEE; PERKINS COIE LLP;<br>MARC ELIAS; AND MICHAEL<br>SUSSMANN,<br>　　　　　　　Defendants. | Case No.:   CIV-18-1019-HE |

**PLAINTIFF'S REPLY IN OPPOSITION TO DEFENDANTS'
MOTION TO STRIKE NOTICE OF SUPPLEMENTAL AUTHORITIES**

　　On January 25, 2019 with Dkt. No. 28, Defendants[1] moved to strike Plaintiff's Notice of Supplemental Authorities (Dkt. No. 27).  This reply brief is made in opposition to that motion from the Defendants.  The Court's order of January 31, 2019 (Dkt. No. 29) has thus far focused its ruling in favor of one of the Defendants' Motions, at Dkt. No. 21. But the Court has not specified its intention with respect to pending Dkt. Nos. 27 and 28, as well as the subsequent associated update regarding this matter in Dkt. No. 31.  For the reasons summarized below, these pending submissions which have not yet been addressed help to clarify why the order in Dkt. No. 29 represents an understandable

---

[1]　Defendants are the Democratic National Committee, Perkins Coie LLP, Marc Elias, and Michael Sussmann.

1

oversight of essential information related to jurisdiction as well as other key aspects of this civil action.  Fed. R. Civ. P. 60(a).

Although "Pleadings must be construed so as to do justice," [Fed. R. Civ. P. 8(e)], the Defendants' concurrent media relations and judicial abuse of process campaigns have successfully branded the Plaintiff as an international criminal in Oklahoma, across America and worldwide, leading to irreparable damages (see Dkt. No. 1, ¶ 16-30).  It is thus readily understandable why this Court has concisely rendered an abbreviated decision without any significant engagement with the factual details and associated legal issues presented by the Plaintiff, consistent with precedent of decisions regarding other incarcerated *pro se* parties in this forum.[2]

Throughout his life as an Eagle Scout, as a distinguished U.S. military veteran and in countless other endeavors, Dr. Page has made extraordinary self-sacrifices in service to his country that have cost him greatly. In contrast, the Defendants have profited handsomely from their illicit activities which risked the life of the Plaintiff (Dkt. No. 1, Exhibit 1; Dkt. No. 22, Exhibit 1).  Accordingly, and while acting under the smokescreen created at their behest by well-paid consultants (*Id.*), the Defendants in this case have misleadingly structured past submissions which they allegedly caused to be submitted to another U.S. District Court – the U.S. Foreign Intelligence Surveillance Court ("FISC"). Dkt. Nos. 27 and 31 show direct evidence of how these alleged crimes are now being rigorously investigated at the demand of some of the most senior leaders in Article I (e.g.

---

[2]  For example: *Pershall v. Piatt*, CIV-11-961-HE (W.D. Okla. April 20, 2012); *Stout v. Whetsel*, CIV-10-1327-HE (W.D. Okla. June 1, 2011); et al.

U.S. Senate Judiciary Chairman Lindsey Graham) and Article II (U.S. Attorney General-designee William Barr) institutions. The past actions of the Defendants thus stand as the antithesis of core legal principles that govern in this jurisdiction and in the United States more generally: "There is no constitutional right of access to the courts to prosecute an action that is frivolous or malicious. No one, rich or poor, is entitled to abuse the judicial process." *Tripati v. Beaman*, 878 F.2d 351, 353 (10th Cir. 1989) (internal citations omitted).

The Courts' order in Dkt. No. 29 repeatedly and appropriately cited the overall framework of *Dudnikov v. Chalk & Vemillion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008) as a guiding precedent for specific jurisdiction. But a closer examination of then-Judge Gorsuch's decision in this case precisely matches each of the five criteria seen in the facts that have already been presented to the Court in this current civil action:

I.  **Intentional Action** – As previously demonstrated in Dkt. No. 1, ¶ 16-30, there can be no question that "the defendants undertook intentional, and allegedly tortious, actions...." (*Dudnikov,* 514 F.3d at 1072, internal quotations omitted). Nearly identical to the current civil action, in *Dudnikov*: "Plaintiffs' Response to Motion to Dismiss… allege that defendants took this action… causing them lost business and a damaged business reputation. They further allege that defendants took this action on the basis of an erroneous…claim". *Dudnikov,* 514 F.3d at 1073. In particular, please see Dkt. No. 22, p. 9-12.

II. **Action was Expressly Aimed at the Forum State** – The *Dudnikov* decision emphasizes that correct legal standards must properly concentrate attention on "the

3

focal point of the allegedly tortious story." 514 F.3d at 1074, internal quotations omitted. As the Plaintiff discussed at length with FBI counterintelligence agents and legal representatives in March and April 2017, Oklahoma was without question the focal point of the tortious story of the resultant domestic terror threats and other associated damages he suffered. (Dkt. No. 31).

III. ***Brunt of the Injury Felt in the Forum State*** – On the basis of both the long series of domestic terror threats (Dkt. No. 31; Dkt. No. 1, ¶ 29-30) and the complete destruction of any ability to effectively conduct business through his Oklahoma company Global Natural Gas Ventures LLC due to the disgraceful false allegations by the Defendants, there can be no doubt that "the brunt of the injury would be felt" in Oklahoma. *Dudnikov,* 514 F.3d at 1077, internal quotations omitted. Although beyond the scope of the extraordinary damages in this civil action, then-Judge Gorsuch's explanation also cites additional precedent [*Keeton v. Hustler Magazine*, 465 U. S. Reports 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)] as he pointed out that the Supreme Court in that case, "found jurisdiction proper in a libel action brought in New Hampshire even though 'the bulk of the harm done to petitioner occurred outside' the forum state." *Dudnikov,* 514 F.3d at 1077.

IV. ***Plaintiff's Injuries Arose out of Defendant's Forum Related Activities*** – Then-Judge Gorsuch next offered three alternative theories for testing "whether plaintiffs' injuries arise out of defendants' contacts with the forum jurisdiction". *Dudnikov,* 514 F.3d at 1078, internal quotations omitted. The egregious impact of

4

the Defendants' torts on the Plaintiff in Oklahoma as demonstrated in Dkt. No. 31 and Dkt. No. 1, ¶ 16-30, easily clears any of these respective hurdles.  First, the Defendants' false allegations that the Plaintiff was "fucking in cahoots with fucking Rosneft… take you out in the street and beat the fucking piss out of you with baseball bats" (*Id.*) demonstrates an unmistakable "causal connection between a defendant's contacts and the suit at issue" in Oklahoma. *Dudnikov,* 514 F.3d at 1078.  For further specifics regarding the impact of the defendants' media contacts and the directly tangible ramifications in the forum jurisdiction of Oklahoma, please see Dkt. No. 27 and 31.  As a second alternative, "Some courts have interpreted the phrase arise out of as endorsing a theory of but-for causation". *Dudnikov,* 514 F.3d at 1078; internal quotations omitted.  But-for the outrageous defamatory allegations from the Defendants and their high-priced servants, the Plaintiff had never experienced any death threats in Oklahoma at any point in his life prior to the Defendants' torts.  Then-Judge Gorsuch also proposed: "Yet a third approach, departing somewhat from these causation-based principles, instead asks whether there is a substantial connection or discernible relationship between the contacts and the suit." *Id.*  As the Plaintiff has previously demonstrated in the pending filings before the Court, there is an unambiguous connection between (1) the false allegations by the Defendants which were illegally submitted to the FISC and the media, (2) the specific nature of the Rosneft-related death threats in Oklahoma and (3) the direct relationship to the damage it has had on the Plaintiff's

   Global Natural Gas Ventures LLC, his principal place of business which is incorporated in Oklahoma, as summarized in this suit. Dkt. No. 1, ¶ 29-30, 41-47.

V.  ***Traditional Notions of Fair Play and Substantial Justice are not Offended*** – For the final *Dudnikov* criterion, the unprecedented steps that the Defendants took to offend nearly all traditional notions of fair play and substantial justice in the *ex parte* proceedings of the FISC now stand as a central point of inquiry for many senior leaders in the U.S. Congress and the U.S. Department of Justice (Dkt. No. 27). While the urgent need for the Defendants to have some belated accountability may seem self-evident to millions of observers across America[3], each of the five sub-factors suggested in turn by then-Judge Gorsuch make the appropriateness of this forum in Oklahoma readily apparent as well (*Dudnikov,* 514 F.3d at 1080):

(1) **burden on the defendant(s)** – Defendant DNC has already operated in Oklahoma without any material restriction throughout the course of many decades. (Dkt. No. 22). Each of the corporate Defendants, DNC and Perkins Coie LLP, have also liberally operated in other diverse states, nationwide, in support of political and other commercial objectives. In stark contrast to the life-shattering burdens that the Defendants have created for the Plaintiff stemming from their egregious offenses in the FISC and the mainstream media, any potential inconvenience associated with this litigation is negligible. The

---

[3] "What You Need To Know About The Much-Discussed Carter Page FISA Document," NPR, July 23, 2018. https://www.npr.org/2018/07/23/631343524/what-you-need-to-know-about-the-much-discussed-carter-page-fisa-document

Defendants' abuse of process in the FISC against the Plaintiff came as the direct result of their multi-million-dollar investment which they jointly co-managed in conjunction with their hired-gun servant consultants.

(2) **forum state's interests in resolving the dispute** – In the aftermath of the Dodgy Dossier, several business opportunities pursued by the Plaintiff could have resulted in millions of dollars of revenue for his Oklahoma corporation, Global Natural Gas Ventures LLC, bringing a significant positive economic impact to the state.  These prospects were effectively obliterated after the Defendants and associates managed to use their false evidence to convince the FISC that the Plaintiff was allegedly an "Agent of a Foreign Power" [50 U.S.C. § 1801(b)] in parallel with a range of criminal leaks to the media[4] [18 U.S.C. § 798].

(3) **plaintiffs interest in receiving convenient and effectual relief** – The Plaintiff's principal interest in this instance is survival, achieving justice and regaining some semblance of personal safety.  By all conceivable measures, Oklahoma remains the essential focal point of this process.

(4) **interstate judicial system's interest in obtaining the most efficient resolution of controversies** – Judge Gorsuch cited *OMI Holdings v. Royal*

---

[4] Ellen Nakashima, Devlin Barrett and Adam Entous, "FBI obtained FISA warrant to monitor Trump adviser Carter Page," *Washington Post,* April 12, 2017, p. A1. https://www.washingtonpost.com/world/national-security/fbi-obtained-fisa-warrant-to-monitor-former-trump-adviser-carter-page/2017/04/11/620192ea-1e0e-11e7-ad74-3a742a6e93a7_story.html

*Insurance Co. of Canada*, 149 F.3d 1086 (10th Cir. 1998) in proposing this list, which in turn clarified that the efficient resolution factor related in part to: "where the wrong underlying the lawsuit occurred" (internal citations omitted). Mending the most meaningful direct impact of the judicial abuses inherent in the torts committed by the Defendants and resultant domestic terror threats experienced by the Plaintiff in Oklahoma makes this the most efficient venue. Furthermore, this jurisdiction as well as all of America will continue to directly benefit from the enormous amount of transparent discovery that is expected from the U.S. Department of Justice's Office of Inspector General and other government institutions which is expected to be declassified over the coming months in response to unremitting Congressional demands.[5]

(5) **shared interest of the several states [or foreign nations] in furthering fundamental social policies** – Dr. Page has spent years working to advance potential business relationships between natural gas ventures in Oklahoma and foreign nations worldwide. Resolving these current controversies in this civil action is an essential prerequisite to the revival of this process which has been essentially decapitated for the time being by the Defendants.

---

[5]   Last Friday, Acting U.S. Attorney General Matt Whitaker, "said that the Carter Page surveillance application, which made reference to the Steele dossier, is currently being looked at by the Department of Justice's Office of Inspector General and U.S. Attorney James Huber, who is examining conservative allegations of surveillance abuse at the FBI and the Justice Department." See Jacqueline Thomsen, Olivia Beavers and Morgan Chalfant, "Five takeaways from acting AG's fiery House hearing," The Hill, February 8, 2019. https://thehill.com/policy/national-security/429214-five-takeaways-from-acting-ags-fiery-house-hearing

Then-Judge Gorsuch similarly noted in *Dudnikov:* "None of these factors, separately or in combination, seem to weigh definitively in favor of defendants." 514 F.3d at 1080. The same holds here in this civil action.

As cautiously alluded to in Dkt. No. 27 and as more explicitly demonstrated in Dkt. No. 31, the abuse of process that the Defendants caused to be submitted to the FISC which falsely branded the Plaintiff as a criminal have unquestionably placed both his life and liberty at risk, putting him in grave danger in the State of Oklahoma by inspiring numerous death threats, particularly from the greater Tulsa area. The ripple effects extend far beyond this state. "The private interest in the accuracy of a criminal proceeding that places an individual's life or liberty at risk is almost uniquely compelling". *Ake v. Oklahoma*, 470 U.S. 68, 78 (1985).

As noted in *Iofina, Inc. v. Khalev*, CIV-14-1328-M (W.D. Okla. May 12, 2017): "Where the deficiency in a notice of appeal, by reason of untimeliness, lack of essential recitals, or reference to a non-appealable order, is clear to the district court, it may disregard the purported notice of appeal and proceed with the case…" (Internal citations omitted). By all indications and especially given the fact that the pending supplemental authority filings remain unresolved at the present time, any notice of appeal seems untimely. Accordingly, and given the clear basis for personal specific jurisdiction, Plaintiff respectfully requests that the Court proceed with the case.

"The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). Throughout the emotional trauma, incessant risk of death and extraordinary

financial harm that the Defendants caused on the Plaintiff over the past several years in Oklahoma and elsewhere, an unprecedented miscarriage of justice of epic proportions has been rendered.  I respectfully request initial steps by the Court to remedy this predicament by taking into account these previously-confidential supplemental authorities, and allowing an amendment to Plaintiff's Complaint that incorporates these factual realities.

February 13, 2019

Very respectfully,
By:  /s/ Carter Page
Carter Page
c/o Global Natural Gas Ventures LLC
101 Park Ave., Suite 1300
Oklahoma City, OK 73102
Phone (405) 825-0172
Fax    (405) 825-0177
cpage@globalenergycap.com

## **CERTIFICATE OF SERVICE**

    I hereby certify that on February 13, 2019, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel registered for ECF.

Dated: February 13, 2019

                                              Very respectfully,

                                              By:  /s/ Carter Page
                                              Carter Page
                                              c/o Global Natural Gas Ventures LLC
                                              101 Park Ave., Suite 1300
                                              Oklahoma City, OK 73102
                                              Phone (405) 825-0172
                                              Fax    (405) 825-0177
                                              cpage@globalenergycap.com