UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CARTER PAGE,<br><br>                         Plaintiff,<br><br>-v-<br><br>DEMOCRATIC NATIONAL<br>COMMITTEE; PERKINS COIE LLP;<br>MARC ELIAS; AND MICHAEL<br>SUSSMANN,<br>                         Defendants. | Case No.:  CIV-18-1019-HE |

## PLAINTIFF'S MOTION TO AMEND ORDER
## GRANTING DEFENDANTS' MOTION TO DISMISS

Pursuant to Federal Rules of Civil Procedure 52(b) and 59(e), Plaintiff hereby moves

to alter and amend the Court's order granting Defendants'[1] motion to dismiss, Doc. #29

(filed January 31, 2019) (the "First Motion Order").  This alteration and amendment is

appropriate given the clarification of supplemental authorities provided by the Plaintiff

that help to confirm this Court's specific personal jurisdiction (Docs. #27 & #31), as well

as the subsequent associated legal analysis in opposition to Defendants "motion to strike"

(Doc. #28) this essential information (as summarized in Plaintiff's reply in opposition,

Doc. #32).

---

[1]    Defendants are the Democratic National Committee, Perkins Coie LLP, Marc Elias, and
Michael Sussmann.

In support, Plaintiff states as follows:

1.     The deadline for filing a motion to "alter or amend a judgment," and/or to "amend . . . findings" or "make additional findings," is 28 days after the entry of the judgment. Fed. R. Civ. P. 52(b) and 59(e).

2.     Federal Appellate Rule 4(A)(vi) also specifies the following:

**(4) Effect of a Motion on a Notice of Appeal.**
(A) If a party timely files in the district court any of the following motions under the Federal Rules of Civil Procedure, the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion:

>    …
>    (vi) for relief under Rule 60 if the motion is filed no later than 28 days after the judgment is entered.

3.     On November 21, 2018, Defendants filed a Motion to Dismiss [Doc. #20] and an accompanying Opening Memorandum of Law in Support [Doc. #21] (together, the "First Motion").  On December 26, 2018, Plaintiff filed a reply Memorandum of Law in opposition to the Defendants' First Motion [Doc. #22].

4.     "The party seeking the exercise of jurisdiction in his favor 'must allege in his pleading the facts essential to show jurisdiction.'" *Penteco Corp. v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991) (internal citations omitted).  On January 22, 2019, Plaintiff provided the Court with updated information from senior current and then-incoming officials on the Judiciary Committees of both chambers of the U.S. Congress as well as the U.S. Department of Justice [Doc. #27; the "Supplemental Authorities Part 1"]. The sources of these Article I and Article II authorities have continued to produce further evidence countering the Defendants' conclusory allegations in the First Motion, as their federal investigations specifically relate to the DNC's and their servants' illegal activities

in 2016.  As per the jurisdiction-related caveats included at the time in the Plaintiff's

Supplemental Authorities Part 1, Dr. Page has tried to protect the integrity of ongoing law

enforcement operations.  However, he also cautiously informed the Court of the

following information related to incontrovertible evidence that the "brunt of the injury"

(*Dudnikov v. Chalk & Vemillion Fine Arts, Inc.*, 514 F.3d 1063, 1077) felt by the Plaintiff

occurred in the forum state of Oklahoma:

> "2017 **interviews with FBI Counterintelligence were directly related to the damages created by the Defendants within the jurisdiction of the state of Oklahoma**.  If necessary in the case of any remaining jurisdictional uncertainties, Plaintiff can make additional Oklahoma-specific information and/or an associated supplemental brief available upon the request of the Court; preferably under seal to protect the integrity of ongoing law enforcement investigations." [Emphasis in the original.]

5.      On January 25, 2019, Defendants sought to strike the Plaintiff's Supplemental

Authorities Part 1 with Doc. #28 [the "Second Motion"].  As of today, February 27, 2019,

the controversies related to the Defendants' Second Motion and the Plaintiff's associated

Supplemental Authorities remain unresolved.

6.      The basis for the Defendants' Second Motion included allegations that the

Plaintiff, "fails to comply with the local rules for filing notices". (*Id.*).  Although the *pro*

*se* Plaintiff sought to do his best to follow the local rules to the greatest extent possible[2],

any relatively miniscule inadvertent administrative mistakes in Doc. #27 are entirely

---

[2]  As noted in *Erickson v. Pardus*, 551 U.S. 89, 91 (2007): "A document filed pro se is 'to be liberally construed,' *Estelle*, 429 U. S., at 106, and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *ibid*. (internal quotation marks omitted). Cf. Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice").

immaterial when compared to the intentional abuse of process that the Defendants, their

consultants and their racket knowingly caused to be committed in the U.S. Foreign

Intelligence Surveillance Court.  The Defendants' defamation and related torts in this

other U.S. District Court in the District of Columbia did not meet the fundamental

standards of justice held sacred in this jurisdiction.  Instead, they convinced this special

intelligence court to "exercise jurisdiction" without "any basis consistent with the

Constitution of this state and the Constitution of the United States." 12 Okla. Stat. §

2004(F).  Amidst the Defendants' egregious violations of the Plaintiff's civil rights, the

Constitution of the United States was for all intents and purposes effectively shredded in

the process.

7.     On January 31, 2019, the Court granted the First Motion Order in favor of the

Defendants.  Given the centrality of specific jurisdiction as the Plaintiff's primary basis

for personal jurisdiction, this Court's grant of the Defendants' motion to dismiss in Doc.

#29 to a large extent rested on the decision in *Dudnikov,* 514 F.3d.   No reference was

made in the First Motion Order to the Plaintiff's preceding Supplemental Authorities Part

1 which had beforehand offered essential information related to the *prima facie*

Oklahoma origins of the primary injuries alleged in this civil action, nor the Defendants'

Second Motion that had previously sought to quash the Plaintiff's related prior filing in

Doc. #28. Although apparently not considered in the First Motion Order, this information

offered initial confirmation of how the domestic terror threats in Oklahoma showed a

clear causal link from the Defendants' defamatory reports.

8.      On February 4, 2019, Plaintiff provided the Court with additional documentation on the pending status of extensive confidential reports that have been in the FBI's possession related to investigations into the death threats from Oklahoma experienced by Dr. Page in 2017. [Doc. #31; the "Supplemental Authorities Part 2"]. *Prima facie*, these ongoing law enforcement operations allegedly stem from pending proceedings that have included evidence related to this Court's specific personal jurisdiction due to death threats directed at the Plaintiff from the forum state and based on the Defendants' defamatory reports. Specifically, the Supplemental Authorities Part 2 included a letter to FBI Director Christopher A. Wray related to prior discussions between the Plaintiff and the Bureau in 2017. The further follow-up correspondence this month on these matters further confirms how "the brunt of the injury would be felt in the forum state" of Oklahoma. *Dudnikov,* 514 F.3d at 1077.

9.      On February 13, 2019, Plaintiff filed his reply in opposition to the Defendants' Second Motion. [Doc. #32].  The legal analysis presented therein demonstrated how the facts previously presented by the Plaintiff to the Court in this civil action precisely match each of the five specific criteria set by then-Judge Gorsuch's in the *Dudnikov* case.

10.     "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). (emphasis in original). The Supplemental Authorities filings by the Plaintiff both prior to and after the First Motion Order make clear the undeniable, *res ipsa loquitur* connection between the Defendants' defamatory endeavors with its high-priced Dossier initiative and the personal security threats their associated

media campaign inspired against Dr. Page in Oklahoma. Specifically, the direct threats of death directed at Dr. Page from Oklahoma mirrored some of the most outrageous falsehoods about the Plaintiff that had been distributed by the Defendants and their consultants beginning in the second half of 2016.  For example, the threats from a 918 area code number echoing the Defendants' Dossier: "fucking in cahoots with fucking Rosneft… take you out in the street and beat the fucking piss out of you with baseball bats".  Doc. #31, Exhibit 1.  Given their Dossier document's primary intended target of now-President Donald J. Trump, the false statements in the Defendants' "opposition research" and their extraordinary efforts to distribute the damaging claims across the media industry and national security offices of the U.S. Government undeniably, "appear to be intended— to intimidate or coerce a civilian population; to influence the policy of a government by intimidation or coercion…" 18 U.S.C. § 2331(5).

11.    Janet Napolitano has suggested that, "Only a party who has been sent away from the clerk's office without being allowed to file a complaint on the last possible day because it was punched with two holes, not three, can fully appreciate the injustice that supposedly benign local rules can cause."[3] To the contrary and at least in this instance, the local rules of W.D.Ok. are significantly more forgiving than the relevant U.S. statute regarding the mandatory court of appeals timing.

---

[3]   Janet Napolitano, "A Comment on Federal Rules, Local Rules, and State Rules: Uniformity, Divergence, and Emerging Procedural Patterns," *University of Pennsylvania Law Review*, Vol. 137, Issue 6 (June 1989), 2063.

12.   On the one hand, under LCvR62.1: "Unless otherwise directed by the court, all proceedings to enforce a judgment are stayed pending the disposition of the following motions… relief from judgment or order made pursuant to Fed. R. Civ. P.60."  On February 13, 2019, Plaintiff filed a response (Doc. #32) in opposition to Defendants' pre-judgment "motion to strike" the Plaintiff's initial notice of supplemental authority.  In accordance with LCvR62.1 regarding stays pending disposition of motions after judgment, Plaintiff's Doc. #32 noted the following with respect to his motion for relief under Rule 60 and the pending supplemental authorities prior to the First Motion Order, including the Second Motion, et al:

> "For the reasons summarized below, these pending submissions which have not yet been addressed help to clarify why the order in Dkt. No. 29 represents an understandable oversight of essential information related to jurisdiction as well as other key aspects of this civil action. **Fed. R. Civ. P. 60(a)**."
> [Emphasis added.]

13.   On the other hand, 28 U.S.C. § 2107 explicitly excludes such a stay by mandating that "no appeal shall bring any judgment, order or decree in an action, suit or proceeding of a civil nature before a court of appeals for review unless notice of appeal is filed, **within thirty days** after the entry of such judgment, order or decree." [Emphasis added.]  Out of an abundance of caution and if an appeal to the Tenth Circuit might eventually become necessary due to this Court's possible decision to grant the Defendants' pending Second Motion, Plaintiff seeks to avoid any such § 2107 restrictions to the extent that the essential jurisdictional implications of his supplemental authorities will not be considered by the W.D.Okla. as included in Docs.# 27, 31 & 32, and if further

proceedings in the Court of Appeals may thus be required.[4]  Based on the long history of

the Defendants' and their consultants' creatively deceiving esteemed U.S. Courts

including the U.S. Foreign Intelligence Surveillance Court thereby rendering incalculable

damages to the Plaintiff over recent years[5], Dr. Page now seeks to avoid any such further

margins for error based on the DNC's and their racket's unconscionable disinformation

tactics against him with that other U.S. District Court in Washington.

14.     As demonstrated in Plaintiff's Supplemental Authorities Part 1 (¶ A-B), the

U.S. Department of Justice ("DOJ") has been taking steps to investigate the alleged

crimes stemming from the Defendants' defamatory Dossier against Plaintiff Dr. Page.

These offenses allegedly led to abuse of process in the U.S. Foreign Intelligence

Surveillance Court [Doc. #1, ¶ 41-45] and countless resulting domestic terror threats that

also stemmed from their defamatory activities. The brunt of these injuries were felt in

Oklahoma.  Associated with these matters and as counsel for U.S. federal agency

Broadcasting Board of Governors ("BBG"), DOJ has belatedly[6] been granted a

rescheduling Order for the Appellee last Friday that extends the brief deadline until April

5, 2019 in the U.S. Second Circuit Court of Appeals. [*Carter Page v. Oath Inc. and BBG*,

2nd Circ., 18-cv-2295, February 22, 2019]. Following the impending departure of U.S.

Deputy Attorney General Rod Rosenstein who signed the fraudulent FISA warrant

---

[4]    Notes of Advisory Committee on Rules – 2009 Amendment to Fed. R. Civ. P. 59 has
included consideration of the "particularly sensitive" nature of such post-judgment motions and
the related timing requirements of Appellate Rules.
[5]    Associated factual details included in Doc. #22, p. 17-24.
[6]    *Id*., Doc. #71: Last year, February 20, 2019 as the brief filing date.  Two days after last
week's original deadline, this extension was belatedly permitted on February 22, 2019.

targeting the Plaintiff based in significant part on the defamatory allegations fabricated by the Defendants and their servants[7], it is allegedly expected that DOJ may now be more forthcoming about the declassification of information related to the U.S. Governments' abuse of process by the time of this brief ("DOJ Defamation Brief") and prior to the April 5, 2019 deadline.

15.    Upon an eventual decision on the Defendants' pending Second Motion and related potential future amendments of the Court's First Motion Order in a way that reflects the factual allegations in Supplemental Authorities Part 2, Plaintiff respectfully requests to schedule an initial pretrial conference following resolution of the DOJ Defamation Brief related to the false reports from the Defendants.  Plaintiff would propose Tuesday, April 16, 2019 as an appropriate time for such proceedings, not long after the resolution of these forthcoming next steps by some U.S. government authorities nationwide to expose the truth regarding the FISA abuse that the Defendants' 2016 defamatory Dossier reports had instigated against the Plaintiff.

Plaintiff has conferred with counsel for the Defendants.  The Defendants oppose this motion.

---

[7]    Consistent with allegations included in prior filings in this civil action, Senate Judiciary Chairman Lindsey Graham has once again recently noted: "I know Rosenstein vehemently denied it but we're going to get to the bottom of it. I do know there was a lot of monkey business about FISA warrants being issued against Carter Page, about dossiers coming from Russia that were unverified."  "Transcript: Sen. Lindsey Graham on 'Face the Nation'," CBS News, February 17, 2019. https://www.cbsnews.com/news/transcript-sen-lindsey-graham-on-face-the-nation-february-17-2019/
See also: Doc. #22, p. 45, endnote ix.

WHEREFORE, the Court should "alter or amend" its "judgment" (Rule 52), and/or

"amend" its "findings" or "make additional findings" (Rule 59(e)) given the apparent

basis for personal jurisdiction as clearly demonstrated in Doc. #31, Plaintiff provides with

this filing a draft order.  This proposal is suggested as an initial step in the restoration of

Constitutional due process standards for the handling of the Plaintiff, following the

monumental impact of the Defendants' defamation and alleged related activities against

Dr. Page.


CONCLUSION

For the foregoing reasons, the First Motion Order should be amended.  Due to the

supplemental authorities and further related information regarding the brunt of the injury

in Oklahoma, Plaintiff also provides notice of his intent to submit a motion to seek leave

to file an Amended Complaint upon resolution of the pending supplemental authorities as

per this motion and the unresolved controversy related to Defendants' Second Motion as

highlighted in Docs. #27-28 and Docs. #31-32.

February 27, 2019

> Very respectfully,
> By:  _/s/ Carter Page_____
> Carter Page
> c/o Global Natural Gas Ventures LLC
> 101 Park Ave., Suite 1300
> Oklahoma City, OK 73102
> Phone (405) 825-0172
> Fax    (405) 825-0177
> cpage@globalenergycap.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 27, 2019, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel registered for ECF.

Dated: February 27, 2019

Very respectfully,

By:  /s/ Carter Page
Carter Page
c/o Global Natural Gas Ventures LLC
101 Park Ave., Suite 1300
Oklahoma City, OK 73102
Phone (405) 825-0172
Fax     (405) 825-0177
cpage@globalenergycap.com

DRAFT

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CARTER PAGE, <br><br>                 Plaintiff, <br><br> v. <br><br> DEMOCRATIC NATIONAL COMMITTEE; PERKINS COIE LLP; MARC ELIAS; AND MICHAEL SUSSMANN, <br><br>                 Defendants. | Case No. CIV-18-1019-HE |

### [PROPOSED] ORDER: PLANS TO AMEND ORDER [DOC. #29], AND SCHEDULE FOR INITIAL CONFERENCE

Pursuant to Federal Rules of Civil Procedure 52(b) and 59(e), it is hereby ORDERED as follows:

1. Defendants' Motion to Strike [Doc. #28] Plaintiff's Notice of Supplemental Authorities is DENIED.

2. Taking into account Plaintiff's Notices of Supplemental Authorities [Doc. #27 and #31] and Plaintiff's reply [Doc. #32] to Defendant's Motion to Strike [Doc. #28], the Court's January 31, 2019 Order granting Defendants' Motion to Dismiss [Doc. #29] is hereby STAYED subject to more detailed jurisdictional information and other related discovery.

3. An initial pretrial conference with the Court will be held at the time and place listed below. Any party proceeding *pro se* must appear in person. Any party who has retained counsel prior to the conference need not personally attend and should instead

DRAFT

have their local attorney in Oklahoma attend on their behalf.[1]   The purpose of the conference is to discuss any possible motions the parties may wish to make at that juncture and the schedule for discovery, beyond the more detailed ongoing investigations and discovery currently underway related to the Defendants' Dossier and the unprecedented related abuses against the Plaintiff. Such investigations include those currently being carried out in parallel by the U.S. Department of Justice Inspector General in Washington as well as in the Tenth Circuit by U.S. Attorney for the District of Utah John W. Huber.   The parties should be prepared to discuss the type of additional discovery that will likely be sought.

**DATE AND PLACE OF CONFERENCE: Tuesday, April 16, 2019 [Provisional]** at [___Time___], in Courtroom 301 of the United States District Court for the Western District of Oklahoma, William J. Holloway Jr. Courthouse at 200 NW 4th Street at Oklahoma City, Oklahoma.

**IT IS SO ORDERED.**

Dated this ___ day of February, 2019.

_____
HON. JOE HEATON
CHIEF U.S. DISTRICT JUDGE

---

[1]   Other attorneys for the Defendants' from Washington, D.C. and New York, N.Y. are welcome to come as well if they would like.